## HARROD v. BISSON.

[No. 6,885. Filed February 23, 1911. Rehearing denied June 1, 1911. Transfer denied October 31, 1911.]

1. PHYSICIANS AND SURGEONS.—*Malpractice.*—*Evidence.*—*Cross-Examination.*—*Fraudulent Conveyance of Property to Escape Judgment.*—In an action against a physician for malpractice, the defendant may be asked on cross-examination whether, just before, or after, the action was brought, he had conveyed his real estate to his wife, such defendant having testified that he had not been negligent in his treatment. *Miller* v. *Dill*, 149 Ind. 326, distinguished. p. 551.

2. NEGLIGENCE.—*Evidence.*—*Subsequent Repairs.*—In an action for negligence caused by defects, evidence of defendant's subsequent repair of such defects is not admissible. p. 555.

3. PHYSICIANS AND SURGEONS.—*Malpractice.*—*Evidence.*—*Opinions.*—In an action against defendant for malpractice, the testimony of a physician that the bones of the maimed hand in question were in the same relationship on the day of the trial as at the time the hand was dressed, is not harmful on the ground that he had not given the facts on which his conclusion was based, where he had testified fully theretofore as to the condition of such hand, it being fairly presumed that his opinion was based on his statement thereof. pp. 556, 557.

4. APPEAL.—*Reversal.*—*Defects.*—A judgment should not be reversed, where the merits of the case have been determined. p. 557.

5. TRIAL.—*Instructions.*—*Directing Recovery upon Proof of Paragraph of Complaint.*—*Interrogatories.*—An instruction that if the plaintiff has proved the material allegations of any of the three

paragraphs of her complaint, the jury may find for the plaintiff, is harmless, where other instructions outlined the conditions under which she might recover; and especially where the answers to the interrogatories showed that the plaintiff was free from contributory negligence, and also indicated that no harm resulted from such instruction. p. 558.

6. TRIAL. — Instructions. — Contributory Negligence. — Interrogatories.—An instruction that the burden of proving contributory negligence is on defendant, and that "unless he has shown the same by a preponderance of the evidence," he should lose on such issue, does not require that the testimony introduced by defendant alone must show such freedom. p. 559.

7. DAMAGES.— Deformities.— Worry.— Negligence.— Personal disfigurement, resulting from negligent injury, and also "anxiety and distress of mind" reasonably caused by the injury complained of, constitute proper elements of damage. p. 560.

8. DAMAGES.—Injured Wrist.—Worry.—In an action for negligent injuries to plaintiff's wrist, she is entitled to damages for any pain, suffering, worry, or anxiety experienced in the actual use of such wrist and which is the direct result of the maimed condition thereof. p. 561.

9. LIMITATION OF ACTIONS.—Amended Complaint.—Tort.—Contract. —Physicians.—Malpractice.—In an action against a physician for damages for malpractice, an amended complaint sounding in tort, filed more than two years after the negligence alleged, is not barred by the two-year statute of limitations, where the original complaint, also sounding in tort, was filed within such time. p. 561.

From Allen Circuit Court; E. O'Rourke, Judge.

Action by Mary Bisson against Morse Harrod. From a judgment for plaintiff, defendant appeals. Affirmed.

Fred Shoaff and Zollars & Zollars, for appellant.

A. H. Bittinger and A. E. Hauck, for appellee.

HOTTEL, J.—This is an action against appellant, to recover damages alleged to have resulted from the negligent and unskilful manner in which he reduced and treated appellee's fractured and injured wrist and hand. The amended complaint is in three paragraphs. The substance of the first is as follows: That on August 25, 1904, appellant was a practicing physician and surgeon; that on said day appellee fell from a chair, and dislocated, bruised and injured the bones in her left wrist and hand; that appellant

undertook to set said bones, and to cure such injuries, but, in his endeavor so to do he was so unskilful, negligent and unprofessional that, by reason of said improper treatment, and unskilful and negligent conduct of the defendant, said bones in said wrist and hand were not set, but were permitted to remain out of place for six weeks and three days, until it became impossible properly to set or cure them, whereby plaintiff is damaged in the sum of $5,000.

A demurrer was filed to each paragraph of the amended complaint, which was overruled, and exceptions given to appellant. The cause was then put at issue by an answer in general denial, and a separate answer of the two-year statute of limitations given to each paragraph. The cause was tried by a jury, and a verdict of $1,000 for appellee returned with answers to interrogatories. A motion for a new trial was overruled, and a judgment for $1,000 was rendered on the verdict, from which appellant prayed an appeal to this court. The only error assigned that is argued by counsel is the overruling of the motion for new trial.

The first ground of this motion relates to the admission of evidence. On cross-examination appellant was asked the following question: "Doctor, did you convey your real estate to your wife after this suit was brought, or just before?" Over the objection of appellant, the doctor was permitted to answer the question, "Yes." Appellant's counsel insists that this was error; that the evidence had no relation to any issue in the case, and especially that it was not admissible on cross-examination, because there was no examination of the witness on this subject in his examination-in-chief. As an independent fact, this conveyance by appellant of his real estate to his wife is foreign to any issue in the case, and it could be competent and material, if at all, but for one purpose, viz.: It might disclose inculpatory facts and circumstances, or an admission, by way of acts and conduct, proper to be submitted to a jury, as tending to show that appellant was conscious of having

failed and neglected to treat appellee's injured arm in that skilful and careful manner that the law requires, and that he feared that he might be required to respond in damages on account of such neglect and lack of skill. We assume that it was on this theory that the trial court admitted the evidence. Appellant testified that he treated the broken wrist, and, in effect, denied any act of omission or commission that in any way tended to show any lack of professional skill, care or attention, but said that he did everything that a careful, attentive and skilful surgeon would have done under the same circumstances. This being the effect of appellant's testimony, it was proper, on cross-examination, for appellee to elicit from appellant any admission, by way of words or conduct, that tended to contradict, destroy, weaken or discredit his said evidence-in-chief, and we think the admission, elicited by the question objected to, tended to have this effect; therefore, the evidence, if competent at all, was proper on cross-examination.

There seems to be some conflict in the authorities in different states as to the admissibility of this character of evidence, but we think the weight of authority favors its admission. In the case of *Myers* v. *Moore* (1891), 3 Ind. App. 226, this court said at page 231: "The appellant testified in his own behalf, and over his objection was asked upon cross-examination, and required to answer, about the disposition made by him of his property, after the commission of the alleged assault and battery. This examination was competent for one purpose. It might disclose inculpatory facts and circumstances proper to be submitted to the jury. It might throw light upon the quality of the acts charged against the appellant in the complaint. It is upon this principle, or theory, that evidence of flight, escape, disguise, concealment and the like, may properly be considered in determining the guilt or innocence of the accused in a criminal case. Its weight would be a question for the jury. If the appellant wanted to avoid an improper application by

the jury of this evidence, he should have prepared a charge upon that subject and requested the court to give it.''

It is said in 2 Wharton, Evidence (3d ed.) §1081: ''Admission may be by acts as well as by words. Silence itself may, as we shall soon more fully see, under certain circumstances be proved as involving an admission; and *a fortiori* may such acts as are tantamount to an admission in words.'' To the same effect is the case of *Parker* v. *Montieth* (1879), 7 Or. 277. See, also, 1 Greenleaf, Evidence (15th ed.) §170. In the case of *Heneky* v. *Smith* (1882), 10 Or. 349, 45 Am. Rep. 143, a deed had been admitted in evidence by the lower court, showing a conveyance by defendant of several parcels of real estate, the consideration for which was $12,000. This deed was executed fourteen days after a shooting had occurred, and six days after the action was commenced and the summons served. The admission of this evidence was also duly objected to, and an exception taken to the ruling of the court permitting it to go to the jury. In discussing the case the supreme court said: ''In view of its character and the circumstances under which it was executed, we think it was properly admitted. The jury might reasonably infer from this act of the appellant, in view of all its surroundings, that it was prompted by a consciousness on his part, that the shooting of the respondent was unjustifiable, and that he was legally liable for the damages occasioned by it. In this view, it would operate like an admission of liability, and be equally competent. 'Admissions may be by acts, as well as by words.' 2 Wharton, Evidence [2d ed.] §1081; *Pennsylvania R. Co.* v. *Henderson* [1865], 51 Pa. St. 315.'' In 1 Wigmore, Evidence §282, the following language is used: ''The conveyance of property, during litigation or just prior to it, may be evidence of the transferor's consciousness that he ought to lose.''

Counsel for appellant insist that in this State the most recent case upon this subject is that of *Miller* v. *Dill* (1898), 149 Ind. 326, which, they say, is directly in point, and an

authority against the admission of this evidence. We do not
so construe it. In that case, plaintiffs brought suit to can-
cel some promissory notes, claiming they were forgeries. One
of the plaintiffs testified in his own behalf, and on cross-
examination was asked if he then owned property, and if
he had conveyed property held by him at the time of the al-
leged execution of the notes, to which questions the court
sustained objections, and the court said in reference thereto:
"It is claimed that these questions would have elicited the
information that the witness had conveyed property held by
him at the time of the alleged execution of the notes, and
that he had no property at the time of the examination. The
inferences sought to be drawn were that the conveyance
was fraudulent, having been intended to defeat these notes,
and therefore an act inconsistent with the evidence of the
witness that he had not executed the notes, and had no
knowledge of their existence. Whatever the legitimate in-
ference from a fraudulent or voluntary conveyance, there
can be no inference from the mere conveyance of one's prop-
erty that he is a debtor, or that he does so to defeat a claim
the validity of which he denies."

It will be seen that the facts in that case were entirely
different from those in the case at bar. It was plaintiff,
and not defendant, who was asked the question, and the
same inference was not warranted in the offered evidence in
that case that would be warranted in this case. In that
case the only questions asked were if he (the plaintiff) then
owned property, and if he had conveyed property held by
him at the time of the alleged execution of the notes. There
was no offer to follow these questions with other ques-
tions and answers, showing that the conveyance was fraudu-
lent. If the harm, that appellant insists probably resulted,
came from said questions, it must have been due to the
silence of appellant, and the want of an explanation by him
of the facts and circumstances connected with the convey-
ance. This the appellant could have prevented by such ex-

planation, if, in fact, the conveyance was *bona fide,* and was not made on account of a consciousness of his own inculpatory acts. After these questions and answers, appellant was entitled, on a redirect examination, to a full explanation and statement of all the facts and circumstances of the conveyance, to the end that the jury might draw no improper inference from the admitted evidence. Appellant also had the further protection that the law affords, of defining the application and purpose of the admitted evidence, by tendering an instruction thereon. *Myers* v. *Moore, supra; Marks* v. *Jacobs* (1881), 76 Ind. 216; *Pittsburgh, etc., R. Co.* v. *Noel* (1881), 77 Ind. 110.

Appellant's counsel insist that numerous personal injury cases, where the court refused to admit evidence of changes in, and repairs to, machinery, after the accident, are

2. controlling on this question. We think such cases are in point, but that, instead of supporting appellant's position, they, by inference at least, contradict it. An examination of those cases which hold that you may not, in a personal injury case, introduce evidence of repairs or changes made in the machinery or appliances after the injury, for the purpose of proving an admission on the part of the defendant that he had been a wrongdoer, will disclose that they all recognize the general rule that such acts or conduct are competent as evidence of admission, but these cases are excepted from the rule as a matter of public policy, and because great harm would result in such cases from the observance of the rule, and good would follow from its abrogation. The theory upon which these cases are put, among the exceptions to the rule, is that men should be encouraged to profit by their experience, and apply the knowledge thus obtained. In the case of *Terre Haute, etc., R. Co.* v. *Clem* (1890), 123 Ind. 15, 19, 7 L. R. A. 588, 18 Am. St. 303, the Supreme Court said: "True policy and sound reason require that men should be encouraged to improve, or repair, and not be deterred from it by the fear that if they

do so their acts will be construed into an admission that they had been wrongdoers.'' In 1 Wigmore, Evidence §283, it is said: ''That argument is that the admission of such acts, even though theoretically not plainly improper, would discourage all owners, even those who had genuinely been careful, from improving the place or thing that had caused the injury, because they would fear the evidential use of such acts to their disadvantage; and thus not only would careful owners refrain from improvements, but even careless ones, who might have deserved to have the evidence adduced against them, would by refraining from improvements subject innocent persons to the risk of the recurrence of the injury.'' We are of the opinion that no error was committed by the admission of this evidence.

Propositions three, four, five, six and seven each relates to the admission of evidence, and call in question certain rulings of the court relative thereto. In the testimony of appellee's witness—Doctor Barnett—the first ruling complained of is presented by the following question and answer: ''Q. Doctor, upon your examination of Mrs. Bisson's left arm, wrist and hand, you may state whether or not, from your examination thereof, it is held in the same position as it was when it was splinted. A. I think the hand and the bones are in the same relationship that they were at the time it was dressed; that is my opinion.'' The objection to this question was that the witness was not asked to state any facts upon which his opinion was based. The question does not, by its express terms, require the witness to base his opinion on the facts which he had detailed to the jury, and in this respect the question is subject to the objection urged by counsel. *Burns* v. *Barenfield* (1882), 84 Ind. 43, 47; *Sauntman* v. *Maxwell* (1900), 154 Ind. 114; *Bedford Belt ·R. Co.* v. *Palmer* (1896), 16 Ind. App. 17, 19. But an investigation of the record discloses that the witness had, before this question was put to him, testified as to his examination of the injured wrist and hand,

and had detailed the conditions which he found. We think, therefore, that while it is true that the question itself does not limit the doctor's opinion to the facts which he had before detailed to the jury, yet it may be fairly presumed that the answer was based upon such facts.

Section 407 Burns 1908, §398 R. S. 1881, provides as follows: "The court must, in every stage of the action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment can be reversed or affected by reason of such error or defect." Section 700 Burns 1908, §658 R. S. 1881, provides in part as follows: "Nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below."

The purpose of these two sections, if they are to be given any force or effect at all, is to prevent the reversal of a case for an alleged error of the kind now under discussion, where an examination of the record itself convinces the court that no prejudice resulted to the complaining party from the error complained of, and that no different result would have been reached if the error had not been committed. The force and effect of these two sections of the statute, and their controlling influence, have so often been recognized and declared by the Supreme Court and by this court, that we deem the citation of authority thereon unnecessary. There can be no doubt that the substance of the matter inquired about in the question complained of was proper, and that the question could have been so framed as to comply with the requirements of the law which appellant insists was disregarded. If the question had been so amended, we feel safe in saying that the same information, and probably the identical answer, would have been elicited. In such case, this court will treat the error as harmless.

Propositions four, five, six and seven relate to the admission of evidence, and the objections to this evidence are practically the same as those stated with reference to proposition three. In said objections there is less reason for counsel's contention than there was in the case of proposition three, and what we have said in connection with proposition three applies with equal or greater force to the objections presented by propositions four, five, six and seven.

Counsel next discuss proposition eight, which is as follows: "The court erred in giving to the jury instruction two, asked for by appellee." The language of the instruction objected to is as follows: "And if you find from all the evidence in this case that plaintiff has proved the material allegations of any of the three paragraphs of her complaint, by a preponderance of the evidence, then you may find for the plaintiff." The language of this instruction is that the jury "may" find for the plaintiff, and not that they "must" so find. The purpose of this part of the instruction was to advise the jury merely that to entitle plaintiff to a recovery she was not required to prove the material allegations of all of the paragraphs of her complaint, but that the proof of the material allegations of any one paragraph was sufficient. No single instruction is required to contain all the law applicable to the case; but if it is correct as to the statement of the law, with reference to the matter upon which it purports to advise the jury, it is sufficient. *Louisville, etc., R. Co.* v. *Jones* (1886), 108 Ind. 551, 570; *Hamilton* v. *Love* (1899), 152 Ind. 641, 71 Am. St. 384; *Sievers* v. *Peters, etc., Lumber Co.* (1898), 151 Ind. 642. The language of the instruction clearly indicated to the jury that it might find for the plaintiff, subject to the condition and rules of law announced in the other instructions given; and, when taken in conection with the other instructions, we do not think that the jury could have been misled by the language of this instruction, and that no harm could have resulted from giving it. But no error could

be predicated on the giving of this instruction that would entitle appellant to a new trial in any event, because an examination of the record makes certain the fact that no harm resulted from the giving thereof.

There were 110 interrogatories answered by the jury, and these answers find conclusively that appellee was free from contributory negligence. They further find that appellant, in attempting to set the bones of appellee's fractured wrist and hand, never got the bones in position, but they were left as appellant found them immediately after the accident. These answers conclusively show that appellee's injuries were caused wholly by appellant's negligence, and that appellee in nowise contributed thereto. Where the answers to interrogatories show conclusively that no harm resulted from the giving of an instruction, the giving thereof, though erroneous, will not be ground for a new trial. *Indianapolis St. R. Co.* v. *Hockett* (1903), 159 Ind. 677; *Ellis* v. *City of Hammond* (1901), 157 Ind. 267.

Proposition nine relates to instruction nine. The same objection is urged to this instruction that was urged to the second, and what we have heretofore said applies with equal force to this instruction; and we might add, that the objection to instruction nine is without merit, because it expressly provides that plaintiff must be without fault before she is entitled to recover.

Counsel object to instruction five, asked for by appellee, and quote as the objectionable feature of the instruction the following language: "The burden of proving contributory negligence is on defendant, Morse Harrod, and, unless he has shown the same by a preponderance of the evidence, your finding as to this question should be for the plaintiff." Counsel then added: "It was not necessary for appellant to show by *his* evidence that there was contributory negligence on the part of appellee." (Our italics.) We might add that the instruction does not say that it was necessary for appellant to show by his evidence.

etc., but what we have said regarding the answers to interrogatories, disposes of the objections to this instruction, and renders the error, if any, unavailing on appeal.

Objection is urged also to instruction four. Counsel insist that it authorized the jury to take into account, in estimating damages, the worry and annoyance of appellee, in contemplating her maimed condition. There is no doubt that counsel for appellant are supported by the weight of authority in their contention that any annoyance, worry or mental pain resulting solely from the contemplation of a maimed member of the body, and the humiliation of going through life in such a crippled condition, is too remote to be considered as an element of damage. *Maynard* v. *Oregon R. Co.* (1904), 46 Or. 15, 78 Pac. 983, 68 L. R. A. 477; *Lake St. Elevated R. Co.* v. *Gormley* (1903), 108 Ill. App. 59; *Chicago City R. Co.* v. *Anderson* (1899), 182 Ill. 298, 55 N. E. 366; *Southern Pac. Co.* v. *Hetzer* (1905), 135 Fed. 277, 68 C. C. A. 26, 1 L. R. A. (N. S.) 288. It is well settled in Indiana that personal disfigurement or deformity, resulting from negligent injury, is a proper element to be considered in estimating damages, and such "anxiety and distress of mind, as are fairly and reasonably the plain consequences of the injury complained of," are proper elements of damage. *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 69 L. R. A. 875, 71 Am. St. 301; *Taber* v. *Hutson* (1854), 5 Ind. 322, 61 Am. Dec. 96; *Cox* v. *Vanderkleed* (1863), 21 Ind. 164; *Fisher* v. *Hamilton* (1874), 49 Ind. 341. In the case of *Southern Pac. Co.* v. *Hetzer, supra,* at page 274, the court said: "The rule which has been adopted by this court, however, and the rule which seems to us the better one, is that in actions for personal injury the plaintiff may recover for the bodily suffering and the mental pain which are inseparable and which necessarily and inevitably result from the injury. But mortification or distrees of mind from the contemplation of the crippled condition and of its effect upon the esteem of his

fellows, that mental pain which is separable from the physical suffering caused by the injury, is too remote, indefinite, and intangible to constitute an element of the damages in such a case, and evidence of it is inadmissible.''

Under the authorities cited, it was entirely proper that the jury, in estimating the damages in this case, should take into account any personal defect resulting to appellee from her injuries, and it was.proper, also, that it consider any mental pain, suffering, worry or anxiety experienced by appellee in the actual use of the injured wrist and hand that was the direct result of the maimed condition, and we think it was in this sense that the instruction complained of authorized the jury to take into account such elements of ''worry'' and ''anxiety,'' and not that the jury should consider any ''anxiety'' or ''worry'' resulting from the humiliation that came from the contemplation of the maimed condition. While the instruction is not carefully drawn in this regard, we think the meaning we have given it is evidently the one intended by the court and accepted by the jury. It is evident from the answers to the interrogatories and the amount of the verdict that the jury was not misled by the instruction. Appellant tendered twenty-nine instructions, all of which were given to the jury, and, taking the instructions as a whole, the law of the case was stated as favorably to appellant as the authorities warrant, and no harm resulted to him from instructions given in the case.

Counsel next insist that the. evidence shows that ''the cause of action relied on by appellee arose more than two years before the filing of the amended complaint.''

9. If the original complaint is based upon tort, and not upon contract, there is nothing in this objection, because it is conceded that the original complaint was filed before the two years expired; but it is insisted that it was predicated upon contract, and that the amended complaint,

being predicated upon tort, was, in effect, a new action, and did not relate back to the time of filing the original complaint. We have examined the original complaint with care, and are clearly of the opinion that counsel's assumption that this complaint is predicated upon contract is not warranted by the facts. The allegations are entirely different from those of the cases cited and relied on by appellant. There is no allegation of a promise on the part of appellant, and the mere fact that appellee alleges that she employed appellant for a certain reward is not controlling, where the other averments of the complaint conclusively show that recovery is sought for injury and damages resulting from the careless, negligent and unskilful treatment by appellant. We are of the opinion that the original complaint was based upon tort and not upon contract. This opinion is supported by the following authorities: *Goble* v. *Dillon* (1882), 86 Ind. 327, 44 Am. Rep. 308; *Boor* v. *Lowrey* (1885), 103 Ind. 468, 53 Am. Rep. 519; *DeHart* v. *Haun* (1890), 126 Ind. 378. The original complaint being based upon tort, the amended complaint unquestionably related back to the time of the filing of the original, which is conceded to be before the expiration of the two years.

We have examined the questions presented and argued by appellant in his brief, and find no error authorizing the granting of a new trial.

Judgment affirmed.