### CLARENCE N. CHAUFTY *vs.* JOHN DEVRIES.

#### JANUARY 8, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Baker, and Stearns, JJ.

(1) *Negligence. Automobiles. Carriers.*

Defendant was engaged in the business of using his automobile, either by himself or through his son as his servant, in the carriage of passengers for hire and was licensed to do so in the city of Providence, and it was customary for the son to solicit and carry passengers for hire within such city from seven to ten-thirty p. m., or later, having no fixed time after which he was not authorized to carry passengers for hire in the evening. The car had a "jitney" sign on it. The son took plaintiff into the car as a passenger about ten o'clock, p. m., on his return from a trip outside the State, which he had made on his own account, without his employer's knowledge, and gratuitously to take some of his friends for a ride for the purpose of carrying one of them to her home outside the State, and to return with the others.

*Held*, that on the evidence the jury were warranted in finding that there had not been any such precise limitation of the route over which the son was authorized to take passengers for hire as was claimed, and that plaintiff paid his fare and the son agreed to take him to his destination as a passenger in the due and regular course of business as a servant of defendant.

*Held*, that on the evidence the jury were warranted in believing that the son accepted plaintiff as a passenger in the due and regular course of business as the servant of the defendant.

*Held*, further, that even if taking his friends for a gratuitous ride outside the State and return was a departure from the service of his master for the time being, when the servant being then in the city of Providence took plaintiff as a passenger for hire, it was competent for the jury to find under the evidence that he had resumed his master's service and was, so far as plaintiff was concerned, acting within the scope of his authority, and the mere fact that he was still serving a purpose of his own in carrying some of his friends toward their home was immaterial.

(2)  Carriers.  Negligence.  Question for Jury.

Where there is a dispute in the evidence as to whether or not the servant was
    at the time of the injury acting for the master, the question is one of fact
    for the jury under proper instructions.

(3)  Evidence.  Admissions by conduct.

The transfer of property by a defendant in a personal injury action, to his
    wife nine days after an accident, was a fact from which the jury could draw
    an inference, based upon the defendant's conduct, taken in connection with
    other evidence and circumstances in the case, unfavorable to the sincerity
    of the defence advanced at the trial by him, but at no time so far as the
    evidence showed, claimed by him immediately after the accident.

TRESPASS ON THE CASE for negligence.  Heard on exceptions of defendant and overruled.

PARKHURST, C. J.   This is an action of the case brought by Clarence N. Chaufty to recover for personal injuries sustained by him on the evening of March 31, 1915, while riding in an automobile belonging to the defendant, by reason of the negligence of the defendant's servant, then engaged in driving the automobile.

The case was tried in June, 1916, before a judge of the Superior Court and a jury and resulted in a verdict for the plaintiff.   The defendant filed in due course his motion for a new trial, which motion was denied by the trial judge on the 12th day of March, 1917.   Thereupon, the defendant in regular course filed his notice of intention to prosecute a bill of exceptions, his bill of exceptions, together with a transcript of the testimony, and the same were in regular course allowed by the trial judge of the Superior Court.   The case is now before this court upon the bill of exceptions.

The evidence as a whole shows that the defendant, on March 31, 1915, was the owner of an automobile and was duly licensed by the authorities of the city of Providence to carry passengers for hire within the city and was engaged in that business; that the defendant had also a state license as owner of the car and as a driver; that defendant's son Garrett DeVries was a duly licensed driver of an automobile under the state law, and was then and had been for some time prior thereto in the employ of his father, as a driver of the

automobile then in use in the carriage of passengers for hire, it appearing that the father was in the habit of driving the car during certain hours of the morning and afternoon, and the son was in the habit of driving the car at certain other hours of the day and in the evening; it further appeared that it was customary for the son to drive the car from about seven o'clock in the evening until some time about or after ten-thirty o'clock, there being no definite stated hour for determining the service in the evening, that time being in the discretion of the son according as the business might seem to require or warrant. It further appears that on the evening of March 31, 1915, the son drove the car in the usual course of business from about seven o'clock, until about nine o'clock, p. m., from his customary stand at Olneyville Square, in the city of Providence, to and from the center of the city at Market Square; that during some time in the afternoon of March 31, he (the son) had made an arrangement with a young lady friend then in the city to drive her together with a Mr. and Mrs. Fraser, with whom she was visiting, also being friends of said Garrett DeVries, to the young lady's home in Seekonk, Mass., commencing the journey at or about nine o'clock, p. m.; that accordingly said young lady and her two married friends at or shortly after nine o'clock met the said Garrett DeVries at Olneyville Square, boarded the car with him and he proceeded to carry them through the city and East Providence to the home of the young lady in Seekonk, Mass., and from there was coming back to carry Mr. and Mrs. Fraser to their home, intending then to take the car to his employer's garage and put it up for the night; that this trip with these passengers to Seekonk and return was arranged by Garrett DeVries of his own motion, on his own account, and was not in the regular course of business, in that it was without his employer's knowledge, and was not a carriage of passengers for hire, but was gratuitous.

It further appears that on the return from Seekonk, Mass., and at or near Red Bridge in the city of Providence, the

plaintiff, accompanied by his wife and minor son, seeing the defendant's car with a "Jitney" sign indicating that it was a car for the carriage of passengers for hire, signaled the car to stop and solicited passage; that the car was stopped by the driver, Garrett DeVries, then having Mr. and Mrs. Fraser on board, and the plaintiff, his wife and son were allowed to enter the rear seat of the car, where Mrs. Fraser remained, after Mr. Fraser at the driver's request vacated the rear seat and took the front seat next the driver.

Up to this point the facts stated are undisputed. The plaintiff claims that he paid his fare, five cents for each of the three, to Garrett DeVries, while Garrett DeVries claims that he did not demand or receive the fare from the plaintiff, although the plaintiff and his family were entire strangers to him, but agreed to carry them gratuitously.

It is undisputed that there was on the car at the time a "jitney" sign, the plaintiff claiming that it read, "Cranston Street," while the defendant claimed that it read "Olneyville via Broadway," or some words to that effect. Since it appears later that after the accident to be related Garrett DeVries or the defendant tore off the "Jitney" sign from the windshield for some reason not very satisfactorily explained, and the sign was not produced in court, it was clearly a question for the jury, if it was at all material, just what sign was on the car at the time. In view of the further facts to be discussed, we think it was not material just what the wording of the sign was.

After taking in the plaintiff and his family, the driver proceeded in a westerly direction toward the center of the city on Angell street until he came to a point some distance easterly of the intersection of Angell and Brook streets, Brook street being slightly down grade as it crosses Angell street from the north to the south; at that point the driver saw an automobile coming in a southerly direction down Brook street toward Angell street, and made a quick turn of the defendant's car toward the south into Brook street, with the result that the defendant's car brought up with considerable

force against the curbstone of the westerly side of Brook street directly in front of two electric poles standing close together near the corner, the force of the impact of the car against the curb being sufficient to break the rear right hand wheel of the car, and to disable the car which was brought to a stop at that point.

The evidence further shows that by reason of this impact with the curbstone and the sudden stopping of the car, the plaintiff was jolted from his seat and severely injured; these injuries are the subject of this suit; and the defendant's brief admits that there was sufficient evidence to go to the jury upon the question of the negligence of Garrett DeVries, and the case is not contested upon that ground; nor is there any claim of contributory negligence.

Both the defendant and his son Garrett DeVries testified in substance that the business of carrying passengers for hire at and prior to the time of this accident was carried on by them with the car then in use between Olneyville Square and Market Square by way of Broadway; that neither of them ever took passengers for hire over any other route (until some later time); and that Garrett DeVries had strict orders from his father as his employer to stick to that route and use no other; but it was admitted that the license issued by the city of Providence permitted the carriage of passengers anywhere within the city. The defendant by way of defence claimed that when his son, who was employed as his servant, and as such had charge of his car, on March 31, 1915, without the master's knowledge or authority, went with his friends to Seekonk, Mass., and was returning there-from with Mr. and Mrs. Fraser, he was acting beyond the scope of his employment, and was on a "frolic of his own"; and that this departure from the authorized and regular service of the master was continuing at the time of the accident and injury to the plaintiff; and that even though Garrett DeVries took plaintiff and his family as passengers for hire at Red Bridge, and received their fares, and was carrying them as passengers for hire at the time of the

accident, he was acting beyond the scope of his authority as servant because his orders were to take passengers only between Olneyville Square and Market Square by way of Broadway. The defendant claims that this evidence is undisputed, and that he is not liable for the acts of his servant, under the opinions of this court in the cases of *Colwell v. Ætna Bottle and Stopper Co.*, 33 R. I. 531; and *Northup* v. *Robinson*, 33 R. I. 496. In both of these cases, it was the undisputed testimony of witnesses adduced by the plaintiffs, that the defendant's servants at the time of the accident were acting entirely beyond the scope of their employment and were doing nothing in the master's service; no evidence was offered by the defendants; a verdict for defendant was directed in each case, and the action of the Superior Court in so directing a verdict was sustained by this court in each case upon the settled principles of law fully set forth in the *Colwell* case, *supra.* A great many cases have been cited on behalf of defendant, which are in support of the principles set forth and fully considered in the *Colwell* case, *supra*, all of which have been examined. All of them rest upon testimony which is practically conclusive as to the act of the servant being beyond the scope of his employment, and a review of them would simply support the *Colwell* and *Northup* cases (*supra*) and is unnecessary.

The case at bar differs from the cases above cited and referred to. The testimony of the defendant and his chauffeur is not conclusive or undisputed. It is undisputed that the defendant was in the business of using his car, either by himself or through his son as his servant, in the carriage of passengers for hire. and was duly licensed to do so within the city of Providence; that it was customary for the son to solicit and carry passengers for hire, within the city of Providence from seven o'clock, p. m., until ten-thirty o'clock, p. m., or later, having no regular and fixed time after which he was not authorized to carry passengers for hire in the evening; that the car had a "Jitney" sign upon it, although just what words were on the sign at the time

of the accident is in dispute; that he took the Chaufty's into his car as passengers about ten o'clock, p. m., the plaintiff having seen the car, heading in a direction and with its sign indicating a direction in which he wished to go; and upon the evidence the jury could find that the plaintiff paid the requisite fares for passage, and that Garrett DeVries accepted the fares and agreed to take him where he wished to go; that this was within the time during which he (the driver) customarily and in the course of his employment took passengers for hire. There was nothing to warn or (1) notify the plaintiff that the defendant's driver was not taking him and his family as passengers for hire in the regular course of business. The defendant and his son by their evidence attempt to show that the son as servant was acting beyond the scope of his employment, because prior to the time of taking up the plaintiff and his family the driver had been since nine o'clock, p. m. (for about an hour) using the car solely on a "frolic of his own," was so using it at the time he took up the plaintiff and his family, and was without authority and expressly forbidden to take passengers for hire at the point where and over the route by which he took them, and that he took them gratuitously and not for hire.

But there is evidence from witnesses who are unimpeached, and so far as the record shows, as worthy of belief as are the defendant and his son, which tends to discredit the evidence of both the defendant and his son. As to the defendant, he testified positively that at and prior to March 31, 1915, he never took passengers for hire over any other route than that between Olneyville Square and Exchange Place, via Broadway; but another witness, Agnes Smith, testified that she had ridden with him at times prior to March 31, 1915, on Westminster street in going to her home; and she identified him as the same person who called to inquire after Mr. and Mrs. Chaufty, about a week after the accident, and said that he then admitted that his car, operated by his son, was in the accident, and that he heard that Mr. and Mrs. Chaufty and their son were badly hurt. The defendant denied that

he sought counsel soon after the accident, but said he was sent for by counsel for an association of jitney drivers, of which he was a member; the counsel consulted by him and who first appeared for him in this case testified that he did not send for him, but, in effect, that the defendant came in to see him, voluntarily, as a member of the Rhode Island Jitney Association. Again it appears that after the accident, about ten o'clock, p. m., the defendant was notified of the same by telephone by his son, and proceeded at once to the scene of the accident and there saw Mrs. Chaufty being assisted into an ambulance; yet it does not appear that he then or later made any pressing inquiry as to the reason why his son was operating his jitney on Angell or Brook street; he claims that he never learned the fact that his son had been to Seekonk with friends until over five months later, on September 20, 1915, when Mrs. Fraser told him; and it appears that he did not discharge his servant for disobedience of orders; but allowed him to continue in his employ for some time after the accident. Other inconsistencies and contradictions between the defendant and his son and between both of them and other witnesses appear from a careful consideration of the transcript.

The son, Garrett DeVries, testified that he never, prior to the date of the accident, took passengers for hire on any route other than that between Olneyville Square and Market Square, via Broadway; yet Thomas Lennon testified positively that he knew Garrett DeVries well by sight and had worked at a place on Canal street next door to where Garrett worked; that thereafter he saw Garrett DeVries running the same car shown to be owned by the defendant as a jitney on Westminster street, and that he, the witness used the same car when driven by Garrett as a jitney and rode with him therein several times from Olneyville Square to Summer street and Dean street by way of Westminster street in the month of March, 1915. Garrett DeVries also testified that he had used the car a number of times for purposes of his own off the route between Olneyville and Market Square,

and had deceived his father about the use of the car; that after the accident on March 31st, 1915, he tore off the jitney sign, but the reason given by him for tearing off the sign does not seem to be very satisfactory.

Upon consideration of all these matters, this court is of the opinion that the testimony of both the defendant and of his son was seriously discredited and that the jury were warranted in disbelieving that there had been any such precise limitation of the route over which the son was authorized to take passengers for hire, as they attempted to claim; and that the jury were fully warranted in believing that, at the time, when Garrett DeVries took up the plaintiff and his family near Red Bridge and started to carry them toward the center of the city he then and there accepted them and received their fares as passengers in the due and regular course of business as the servant of his father, and that his service was not limited to a certain route as claimed by him and by his father in their evidence.

This case is therefore not within the principle of the decision in *Colwell* v. *Ætna Bottle and Stopper Co.* (*supra*), where the evidence that the servant was acting beyond the scope of his employment at the time of causing the injury complained of was undisputed and conclusive, and therefore warranted the trial judge in directing a verdict for the defendant.

(2)   The case at bar falls within a numerous class of cases, where there is a dispute in the evidence as to whether or not the servant was at the time of the injury acting for the master and within the scope of the servant's employment; in which cases it has been repeatedly held that the question is a question of fact for the jury under proper instructions.

In *Ward* v. *Teller Res. & Irr. Co.* (Sup. Court of Col.) (1915) 153 Pac. 219, 221, the chauffeur testified that at the time of the injury to the plaintiff who was run down on a public highway, he the chauffeur, who was a servant of the defendant, was using the defendant's car for his own purpose and not on the master's business, in going to his dinner

which was an unauthorized use. But it also appeared in evidence that immediately after the accident the chauffeur had made certain statements that he was not going to his dinner but was "trying out the machine" (this being within the scope of his employment). The chauffeur upon being questioned with regard to these statements did not deny them, but simply said he did not remember. After verdict for the plaintiff for $5,000, a motion for new trial was granted by the trial court on the ground "that the chauffeur was at the time of the accident in no manner performing the duties of the defendant company, and was not acting within the line of his duty or the scope of his authority, is beyond all doubt;" the Supreme Court upon review said that this statement was not justified by the testimony, and held that it was a question for the jury whether or not the chauffeur was acting within the scope of his authority, citing numerous cases (p. 221). To the same effect, so far as the general principle is concerned, see *Ritchie* v. *Waller*, 63 Conn. 155; *Kneff* v. *Sanford*, 63 Wash. 503; *McKeever* v. *Ratcliffe* 218 Mass. 17; *Reynolds* v. *Denholm*, 213 Mass. 576; *Ouimette* v. *Harris*, 219 Mass. 466; *Moon* v. *Matthews*, 227 Pa. St. 488; *Sina* v. *Carlson*, 120 Minn. 283, 285; *Fielder* v. *Davison*, 139 Ga. 509; *Carrier* v. *Donovan*, 89 Atl. (Conn.) 894.

In none of these cases do we find exactly such a state of facts as exist in the case at bar, and it would unduly extend this opinion to review them in detail. But in all of them there were such facts or circumstances or admissions or conduct on the part of the defendants and their servants as to discredit the defence that the servant was acting beyond the scope of the servant's employment in the service of the master; and in all of them it was held that the question was one for the jury under proper instructions.

It is urged on behalf of defendant that, although it be found that his driver took plaintiff and his family for hire, as we hold the jury was entitled to find under the evidence, yet the defendant should not be held liable, for two reasons: first, because the servant had not, at the time of taking the

passengers for hire, returned to his master's service, since he was still carrying Mr. and Mrs. Fraser on the way to their home, and so had not completed the "frolic of his own;" second, because he was not on the route to which he was confined by strict orders from his master; as to this second contention we have already disposed of it by showing that it was a question for the jury whether Garrett DeVries was subject to any such strict orders, and the verdict of the jury would seem to have settled that question in the negative. As to the first, conceding that the taking of his friends for a gratuitous ride to Seekonk, Mass., and return, was a complete departure from the service of the master for the time being, we are of the opinion that when he, being then in the city of Providence, took the plaintiff and his family as passengers for hire, it was competent for the jury to find under the evidence that he had resumed his master's service and was, so far as plaintiff was concerned, acting within the scope of his authority. The mere fact that he was still serving a purpose of his own in carrying Mr. and Mrs. Fraser toward their home, at the time of the accident, does not relieve the master, and was immaterial. See *McKeever v. Ratcliffe*, 218 Mass. 17, 20; *Reynolds* v. *Denholm*, 213 Mass. 576, 578; *Sina* v. *Carlson*, 120 Minn. 283, 285; *Rahn* v. *Singer Mfg. Co.*, 26 Fed. 912, 916; *Ritchie* v. *Waller*, 63 Conn. 155, 163, and cases cited.

The defendant in due course after verdict for plaintiff prosecuted his motion for a new trial before the trial judge; and thereafter the trial judge approved the verdict and denied the motion. The defendant's exceptions, tenth to thirteenth, inclusive, were taken to this action of the trial judge. For reasons above stated we think the case was properly submitted to the jury and we find no error in the refusal to grant a new trial.

Defendant also states in his bill certain exceptions numbered seventh to ninth, inclusive, which relate to certain alleged errors in the charge to the jury, and in the refusal of the court to charge as requested by defendant. We have

carefully examined the charge as a whole in the light of a full consideration of the evidence; we are of the opinion that the charge taken as a whole correctly stated the law of the case to the jury and was not misleading; and that the particular portions criticised in argument urging these exceptions, when taken in connection with the context, were not shown to be erroneous or misleading. It would serve no useful purpose to set them forth in detail. Exceptions seventh to thirteenth, inclusive, are overruled.

(3)     Exception third is based upon the admission in evidence of a certain question asked by plaintiff's counsel in cross-examination of the defendant, viz.: "436. Q. Did you make any transfer of your property immediately after this Jitney accident?" Defendant objected and the objection was overruled; defendant noted exception. Defendant replied, "A. I transferred my part of my property to my wife. It was intended to be done long before;" "437. Q. But you did it immediately after this accident, didn't you? A. Yes, sir; 438. Q. You did it on the 9th of April, 1915? A. I think I did." (See tr. pp. 476-478.) Exception sixth is based upon the admission of a certified copy of a deed from defendant to his wife dated April 9, 1915, and duly recorded, etc. (tr. p. 567), to which exception was duly taken.

We do not find reversible error in the admission of this testimony. The transfer of defendant's property so soon after the accident was a fact from which the jury could draw an inference, based upon the defendant's conduct, taken in connection with other evidence and circumstances in the case, unfavorable to the honesty and sincerity of the defence put forward by him at the time of the trial, but at no time, so far as the evidence showed, claimed by him immediately after the accident. It has been held that such evidence is admissible as evidence of a consciousness that the defendant was legally liable, as appears in the cases cited *infra*. The defendant attempted to minimize the effect of this evidence by saying as quoted above in his answer, that "it was in-

tended to be done long before." He did not attempt further to explain or justify the transfer and was not examined thereon by his counsel.

In *Heneky* v. *Smith*, 10 Or. 349, 356, which was an action for assault, it was shown that defendant and his wife made a conveyance of their property (some 400 acres of land) for the expressed sum of $12,000. The deed was executed fourteen days after the shooting and six days after the action was commenced, and the summons served.

On p. 356, the court says: "In view of its character, and the circumstances under which it was executed, we think it was properly admitted. The jury might reasonably infer from this act of the appellant, in view of all its surroundings, that it was prompted by a consciousness on his part, that the shooting of the respondent was unjustifiable, and that he was legally liable for the damages occasioned by it. In this view, it would operate like an admission of liability, and be equally competent. 'Admissions may be by acts, as well as by words.' (2 Wharton's Law of Ev., Sec. 1081. *Pennsyl. R. R. Co.* v. *Henderson*, 51 Pa. St. 315;" . . . (other cases cited).

In a recent case the Supreme Court of Michigan admitted such testimony as proper. The head note sufficiently states the question before the court and the ruling: "Where in an action for assault and battery, including ravishment, the evidence showed that on the day following the assault plaintiff informed her husband, who then sought and found defendant, and requested him to be at the husband's house that night, evidence that thereafter during the same afternoon defendant approached a third person and asked him if he would go on defendant's bond, if desired, was admissible to indicate guilty knowledge." In this case the defendant had not told the intending bondsman what he wanted it given for, saying he would tell him later; nevertheless, the Supreme Court said: "It was claimed by the plaintiff that it was fairly inferable from the sequence of facts that inquiry as to bonds was the result of his talk with plaintiff's hus-

band, and tended to indicate guilty knowledge. We are not prepared to say that such evidence had no probative force, and do not find its admission reversible error." *Totten* v. *Totten*, 138 N. W. (Mich.) 257-259 (1912).

In *Harrod* v. *Bisson*, 48 Ind. App. 549, 551-555, in a suit for malpractice against a surgeon, the fact that he had transferred his property about the time of suit elicited on cross-examination was held proper. The case distinguishes *Miller* v. *Dill*, 149 Indiana 326, cited on defendant's brief. The opinion says, p. 551: "As an independent fact, this conveyance by appellant of his real estate to his wife is foreign to any issue in the case, and it could be competent and material, if at all, but for one purpose, viz.: It might disclose inculpatory facts and circumstances, or an admission, by way of acts and conduct, proper to be submitted to a jury, as tending to show that appellant was conscious of having failed and neglected to treat appellee's injured arm in that skillful and careful manner that the law requires, and that he feared that he might be required to respond in damages on account of such neglect and lack of skill. We assume that it was on this theory that the trial court admitted the evidence." . . . "It was proper, on cross-examination, for appellee to elicit from appellant any admission, by way of words or conduct, that tended to contradict, destroy, weaken or discredit his said evidence-in-chief, and we think the admission, elicited by the question objected to, tended to have this effect; therefore the evidence, if competent at all, was proper on cross-examination. There seems to be some conflict in the authorities in different states as to the admissibility of this character of evidence, but we think the weight of authority favors its admission;" the court then cites several authorities and reviews at length *Heneky* v. *Smith*, 10 Or. 349, *supra*. The court then proceeds (p. 553): "Counsel for appellant insist that in this State the most recent case upon this subject is that of *Miller* v. *Dill* (1898), 149 Ind. 326, which, they say, is directly in point, and an authority against the admission of this evidence. We do not so construe it." . . .

The court then proceeds to state and distinguish *Miller* v. *Dill, supra;* and upon this point concludes as follows, pp. 554-555: "It will be seen that the facts in that case were entirely different from those in the case at bar. It was plaintiff and not defendant, who was asked the question, and the same inference was not warranted in the offered evidence in that case that would be warranted in this case. In that case the only questions asked were if he (the plaintiff) then owned property, and if he had conveyed property held by him at the time of the alleged execution of the notes. There was no offer to follow these questions with other questions and answers, showing that the conveyance was · fraudulent. If the harm, that appellant insists probably resulted, came from said questions, it must have been due to the silence of appellant, and the want of an explanation by him of the facts and circumstances connected with the conveyance. This the appellant could have prevented by such explanation, if, in fact, the conveyance was *bona fide*, and was not made on account of a consciousness of his own inculpatory acts. After these questions and answers, appellant was entitled, on a redirect examination, to a full explanation, and statement of all the facts and circumstances of the conveyance, to the end that the jury might draw no improper inference from the admitted evidence. Appellant also had the further protection that the law affords, of defining the application and purpose of the admitted evidence, by tendering an instruction thereon."

See also 2 Wharton on Ev. (2d ed.) § 1081; 1 Wigmore on Ev. § 282; *Pennsylvania R. R. Co.* v. *Henderson*, 51 Pa. St. 315.

Defendant's counsel cite three cases in support of their contention that the admission of this testimony was error. In *Givens* v. *Berkley*, 108 Ky. 236, 238, an assault case, the court considered many other fatal and obvious errors in the admission of evidence and treats the point in question curtly as follows: "No evidence in regard to any conveyance made by defendant to his wife should have been admitted,"

without argument or citation of authority; the case is not fully reported as to the facts, and we do not regard it as of much weight on this point.

*Miller* v. *Dill,* 149 Ind. 326, has already been referred to and distinguished in Indiana by the Appellate Court in *Harrod* v. *Bisson, supra;* it does not appear that this latter case ever went to the Supreme Court of Indiana, but we deem it to be in point and well reasoned on this question, and are of the opinion that *Miller* v. *Dill* is not in point.

*Lucas* v. *Nichols,* 52 N. C. 32, is similar to and in direct conflict with the doctrine of *Totten* v. *Totten,* 138 N. W. (Mich.) 257, *supra;* it is not as well reasoned as that case, and we do not regard it as being of so much weight.

We are of the opinion that the weight of authority as cited to us by counsel in their briefs is strongly in favor of the plaintiff's contention that the evidence of the transfer of the defendant's property to his wife was admissible and that there was no error on the part of the trial judge in allowing it to go to the jury.

The other exceptions alleged by defendant are not urged.

Upon full consideration we are satisfied that the case was one which was properly submitted to the jury; we find no reversible error on the part of the trial judge in respect of any of the matters alleged in the defendant's exceptions, and the same are overruled.

The case is remitted to the Superior Court sitting in Providence County with direction to enter its judgment for the plaintiff upon the verdict of the jury.

*Philip S. Knauer, John F. Collins,* for plaintiff.

*Waterman & Greenlaw,* for defendant.    *Charles E. Tilley,* of counsel.