## HUSSMANN v. LEAVELL & SHERMAN.
### (No. 2314.)

Court of Civil Appeals of Texas. El Paso. Sept. 19, 1929.

Rehearing Denied Oct. 17, 1929.

Turney, Burges, Culwell & Pollard, of El Paso, for appellant.

Whitaker & Peticolas, of El Paso, for appellees.

PELPHREY, C. J. Appellees in this suit are seeking to recover from appellant a commission of $5,000 alleged to be due them by virtue of their assistance in bringing about the sale of a certain tract of land located at

the corner of San Antonio and Stanton streets in the city of El Paso, Tex.

Appellees allege that prior to May 1, 1927, they were the agents for the then owners of the property, and as such agents, carried on extensive correspondence with divers chain store organizations, including J. C. Penney Company and McCrory Stores Corporation, relative to executing a long-term lease on the property; that on or about May 1, 1927, the property was purchased by appellant; that in either the latter part of July or the early part of August, 1927, one Joe Kline of Los Angeles, Cal., came to El Paso for the purpose of conferring with appellant relative to a purchase of the property; and that the said Kline expressed himself as being willing to purchase the property only in the event that he would be able to lease it to some' responsible tenant for an extended period.

The issue, between the parties, made by the pleadings and the evidence, we think, is presented quite clearly in the first issue submitted to the jury, and the same will here be quoted: "Question No. 1: Do you find from a preponderance of the evidence, as contended by plaintiffs, that Mason Pollard, thereunto authorized by Harry L. Hussmann, on or about July 31st, 1927, agreed with Ray E. Sherman, representing Leavell & Sherman, that in consideration of the use of their files and information and their assistance in inducing Joe Kline to purchase the property in question in this case, that if he should purchase it and lease it to one of the firms or corporations with whom Leavell & Sherman had been in correspondence, they should be paid a commission of $5,000.00; or was the agreement, as contended by defendant, that in the event the said Kline purchased the property and thereafter leased to McCrory Stores Corporation, that then, in that event only, should Leavell & Sherman be paid a commission of $5,000.00?"

Upon the jury's finding in accordance with the contention of appellees, the court rendered judgment in favor of Leavell & Sherman for the sum of $5,000, and Hussmann has appealed.

## Opinion.

The first three propositions presented in appellant's brief deal with the question of the right of recovery by appellees on the theory of their activities being the procuring or inducing cause of the lease from Kline to the Penney Company.

As we understand the record, appellees are not basing their claims for compensation upon the ground of any activities on their part being such procuring cause; rather, do we think, their claim is based solely upon the agreement which they allege was made with appellant's agent as it appears in the issue above quoted. Therefore there could be no connection between their right to recover and their efforts or lack of efforts in procuring such lease.

Appellant's first assignment of error reads: "The court erred in permitting the plaintiff to show by the witness J. M. Pollard that the defendant had been indemnified against loss growing out of this transaction by one Joe Kline, as is made to appear from defendant's bill of exceptions No. 1, made part hereof."

The bill of exceptions reveals: That Mr. Pollard, on cross-examination, was asked this question: "Did Mr. Kline undertake, in consideration of the last option any responsibility in this suit, or any commissions claimed by Leavell & Sherman?"' That the question was objected to by appellant for the reason that it involved an immaterial issue, that Mr. Kline was not a party to the suit, that it made no difference in so far as the issue on trial was concerned what, if any, agreement existed between appellant and Kline relative to the obligation of Kline to appellant as to the payment of commissions to Leavell & Sherman, and that said testimony was highly prejudicial to the interest of appellant. That before any answer was made this further question was asked: "Was there any agreement by Mr. Kline in consideration for any of these extensions that he would take care of Mr. Hussmann's liability to Leavell & Sherman, if any?" That the same objections were made by appellant to this question. That these objections were overruled by the court, and the witness answered, "Yes."

Appellant contends in his brief that the evidence was erroneously admitted because it was immaterial, throwing no light upon the question as to whether or not appellees were entitled to recover; that it had a tendency to indicate to the jury that, possibly, appellant felt that he might be liable to appellees, which was the very question at issue in the lawsuit; and that it was prejudicial.

In support of that contention, he cites: Water, Light & Ice Co. v. Barnett (Tex. Civ. App.) 212 S. W. 236; Lone Star Gas Co. v. Coates (Tex. Civ. App.) 241 S. W. 1111; Acola v. Magnolia Petroleum Co. (Tex. Civ. App.) 261 S. W. 384; Fakes & Co. v. Ft. Worth Gas Co. (Tex. Civ. App.) 280 S. W. 234; and Lange v. Lawrence (Tex. Civ. App.) 259 S. W. 261.

On the other hand, appellees assert the evidence to be proper and admissible as an admission by conduct, having occurred after the transaction, and as tending to show the weight to be given to Pollard's testimony that the offer was limited to the McCrory Stores Corporation.

They cite us: Texas & N. O. R. R. Co. v. Assurance Co. (Tex. Civ. App.) 137 S. W. 401; Austin Electric R. Co. v. Faust, 63 Tex. Civ. App. 91, 133 S. W. 449; Railway v. Thomas (Tex. Civ. App.) 167 S. W. 784; Railway v. Hertzig, 3 Tex. Civ. App. 296, 22 S. W. 1013; Harris v. Allison (Tex. Civ. App.) 11 S.W.(2d) 821; M., K. & T. R. R. Co. v. Kellerman, 39 Tex. Civ. App. 274, 87 S. W. 401; San Angelo v. Baugh (Tex. Civ. App.) 270 S. W. 1101; Benussi v. Hannah, 53 Cal. App. 243, 199 P.

1065; Cusick v. Miller, 102 Kan. 663, 171 P. 599, L. R. A. 1918D, 1086; Rice v. Transit Co. (Mo. Sup.) 216 S. W. 746; Fournier v. Rund, 242 Mass. 272, 136 N. E. 75; Pennington v. K. C. Rys. Co., 201 Mo. App. 483, 213 S. W. 137; and Chaufty v. De Vries, 41 R. I. 1, 102 A. 612, as supporting their view.

At the outset we are confronted with the question of the relevancy of the evidence complained of to the fact to be determined.

"The word 'relevant' means that any two facts to which it is applied are so related to each other that, according to the common course of events, one, either by itself or in connection with other facts, proves or renders probable the past, present, or future existence or nonexistence of the other." 4 Words & Phrases, Second Series, p. 252.

"By relevancy is meant the logical relation between proposed evidence and a fact to be established. All facts are admissible in evidence which afford reasonable inferences or throw any light upon the matter contested." 10 R. C. L. 925; Stone v. Day, 69 Tex. 13, 5 S. W. 642, 5 Am. St. Rep. 17.

And again in 10 R. C. L. 927, we find: "Evidence tending to prove a fact must be submitted to the jury, however slight it may be. It is competent, relevant and admissible, though it may not be such as of itself to establish a fact, if it is such that the jury may, in connection with it and other facts properly alleged, make a finding respecting some issue material to the cause."

Applying the above definitions to the evidence in question, is it relevant?

The only case with an analogous state of facts, decided in this state, which we have been able to find, is the case of Florence v. Smith (Tex. Civ. App.) 241 S. W. 312.

The facts of that case, as stated by Justice Hodges of the Texarkana Court of Civil Appeals, were:

"The appellant, Florence, sued the appellee, J. M. Smith, upon an open account aggregating $252.30. It was alleged that most of the items constituting the account were for goods delivered to Jess Cannon and Dick Smith, tenants upon the farm of the appellee. It was also alleged that the goods were delivered to the tenants at the request of the appellee and upon his express promise to pay for them. These averments were denied, and in the trial which followed there was a direct conflict between the testimony of the appellee and that of the appellant, Florence. The latter swore to an express agreement on the part of Smith to pay for the goods delivered to his tenants, while Smith swore equally as positively that no such agreement had ever been entered into.

"On cross-examination the appellee was interrogated concerning a note for the exact amount of this debt which he held against Cannon. He was asked the following question:

"'Isn't it a fact that you did contract with Mack Florence to let Jess Cannon and Dick Smith have stuff and charge to you, and that in the fall, after you got the statement from Mack that you say you got through the mail, didn't you make Jess Cannon give you a note for $252.30 with a mortgage on his mules, wagon, and cattle, and wasn't that note taken by you to cover the amount of the account that you stood for at Mack Florence's?'

"He was asked the further question: 'Did Jess Cannon ever owe you $252.30 for anything except the amount of the debt that M. C. Florence has charged against you?'"

These questions were objected to as being immaterial and irrelevant and the objections were sustained. The Court of Civil Appeals held that the questions were proper and that the objections should have been overruled, and reversed the case for that reason.

We also think that that line of cases in which the courts have held that an insurance company suing a railroad company upon the subrogation arising in its favor was entitled to prove that the railroad company had settled with the claimant for that part of the loss not covered by insurance, T. & N. O. R. R. Co. v. Assurance Co. (Tex. Civ. App.) 137 S. W. 401, that an attorney in a suit on an assignment of an interest in a negligence claim was entitled to prove that the railroad company had settled with his client, Railway v. Thomas (Tex. Civ. App.) 167 S. W. 784, that a party suing for damage to grass from burning could prove that the railroad company had settled with other parties whose grass was burned at the same time, Railroad v. Hertzig 3 Tex. Civ. App. 296, 22 S. W. 1013, that plaintiff was entitled to prove that defendant, after an automobile accident, had transferred all his property to his wife, Chaufty v. De Vries, 41 R. I. 1, 102 A. 612, while not entirely analogous, in that the evidence does not show a substitution of the liability of a third person, not a party to the suit, for that of the defendant, yet, we think, they are persuasive on the question of the evidence here complained of being relevant as an admission by conduct.

■ We agree with appellant that the evidence was without a doubt harmful, and that the general rule, as laid down in the cases he has cited, is that the plaintiff cannot show that indemnity insurance was carried by defendant, but we cannot go to the length he would have us go and hold that there are no exceptions to that rule.

■ It seems to be well established that where a party on the trial of an action advances contentions which are inconsistent with his prior conduct in relation to the matter in controversy, such prior conduct may be shown as being in the nature of an admission. 22 C. J. p. 317, and cases cited.

■ It appears equally true that in the case of a defendant it may be shown that his conduct has been such as to involve a recognition of the validity of the claim which he resists,

as by seeking a release from liability, withdrawal from contesting, or doing something which indicates fear of an unsuccessful issue of litigation. 22 C. J. p. 319 and cases.

██ According to the view we take of the case, we are confronted with the very perplexing situation in which, if we hold that the evidence was inadmissible, we will be denying to appellees the benefit of evidence which tends strongly to sustain their contention in the case and refute that of defendant; while, if we hold it admissible, it will, to some extent at least, have the effect of withdrawing the local defendant from the consideration of the jury and substituting a nonresident in his place.

On the one hand, we will deprive appellees of the right to show, in a case where there is a sharp conflict as to the exact terms of the agreement, that defendant with knowledge that they were asserting their claim for a commission in case Kline leased the property to J. C. Penney Company, and after being advised by Kline that he would probably lease to the Penney Company, that he, in executing an option to Kline on the property, saw fit to require of Kline a contract to hold him harmless as to appellees' claim, or else, by admitting the evidence, place the jury in a position to reason that a finding on the issue favorable to appellees would result in extracting money from the pockets of a nonresident, of whom they had probably never heard before their selection on the jury, and not from the pockets of the defendant.

During our investigation we found two analogous cases from other jurisdictions holding contrary to the decision in Florence v. Smith, supra, namely, Gore v. Brockman, 138 Mo. App. 231, 119 S. W. 1082, and Lucas v. Nichols, 52 N. C. 32.

In the first case in which a physician was being sued for malpractice, he was asked the following question on cross-examination: "Doctor, I will ask you if on or about the date (the time when plaintiff's condition became serious) you didn't take out what is called 'Doctor's Protective Insurance' to guard you against damages that might accrue from this or any other suit for malpractice?" He answered in the affirmative.

The Kansas City Court of Appeals in discussing the question of the admissibility of the evidence had this to say: "The question was improper and was highly prejudicial. The issue on trial was negligent treatment of plaintiff by defendant as her physician, and indemnity insurance would not aid in determining that question; but, more than that, its tendency and effect was to withdraw the real defendant from the consideration of the jury and to substitute for him an insurance company. A litigant has a right to his own personality, and the opposing party has no right to have the consideration of his claim influenced or measured by any other standard, so far as individuality is concerned,

than that afforded by the party of whom he complains. He cannot ask unliquidated damages of a good man who may have injured him and then substitute a bad man at the trial."

This holding was quoted with approval by the Austin Court of Civil Appeals in Levinski v. Cooper et al., 142 S. W. 959. In the last-cited case, however, the indemnity inquired about was taken out before the injury complained of had been sustained, and not afterwards, as in Gore v. Brockman.

The Kansas City court, in effect, held that the evidence offered was irrelevant and immaterial, with which holding we cannot agree, and then naturally held that it, being irrelevant and prejudicial, should be excluded.

In the case of Lucas v. Nichols, supra, the Supreme Court of North Carolina held that evidence to show that defendant had paid third persons $200 to indemnify him in the sum of $1,000 against any judgment which the plaintiff might recover against in a suit for slander. The court said: "If pertinent at all, it must be as an admission of guilt, and we do not think such an interpretation can be fairly put upon it. While it has been held of late, and especially by the American Courts, that admissions of a certain class, made upon a negotiation for a compromise, are competent, mere propositions, upon such a negotiation, to pay for one's peace, have uniformly been excluded. Indeed, there seems to be a marked distinction between an admission of particular facts, and an offer of a sum of money to buy peace. If a direct offer, to the party complaining, to buy peace, be excluded, no good reason is perceived why a security taken from an indifferent person, as an indemnity, should not also be excluded. If the first be excluded as impertinent and of no weight, so ought, also, the last."

We are not impressed with the reasons assigned by the court for its holding, it being a well-known principle of law that offers of compromise are excluded solely because the law favors the settlement of controversies out of court, and not because of their lack of weight. The natural consequence of the fact that parties may make to each other offers of compromise is the settlement of disputes without the aid of the courts, while it appears to us that the buying of indemnity by a defendant would have just the opposite effect.

Bearing in mind the rule that a party cannot be deprived of the benefit of evidence which is relevant and material because it may also have a tendency to prejudice the adverse party in the eyes of the jury, 22 C. J. p. 193, we have decided to follow the Texarkana Court in Florence v. Smith, supra, and therefore hold that the introduction of the evidence complained of was not error.

The court, at the request of appellant, submitted to the jury the following special issue: "Special Issue B. Do you find from a

preponderance of the evidence that the activities or correspondence had by Leavell & Sherman with J. C. Penney Company, or its agents, were instrumental in securing for Joe Kline the J. C. Penney Company lease?"

Appellant contends that he was entitled to a judgment in his favor by reason of the fact that the jury answered the above issue in the negative; or, that no judgment should have been rendered in the case because of findings of the jury on the last quoted issue and on question No. 1 are contradictory.

As said in the beginning of this opinion, we do not understand that appellee's claim for a commission is based upon their efforts in securing the lease from Kline to J. C. Penney Company, but upon their efforts in inducing Kline to purchase from Hussmann, and we fail to see how a finding on special issue B could in any manner affect their right to recover under the agreement as alleged in their petition and found by the jury in answer to question No. 1.

We find no error in appellant's remaining assignments, and they are overruled.

Finding no error calling for a reversal, the judgment of the trial court is affirmed.