### John McKeever *vs.* William L. Ratcliffe.

Suffolk.   March 6, 1914.—May 22, 1914.

Present: Rugg, C. J., Loring, Braley, Sheldon, & Crosby, JJ.

*Agency,* Scope of employment.   *Evidence,* Admissions and confessions.

In an action for personal injuries from being knocked down by an automobile of the defendant negligently driven by the defendant's chauffeur, where the only question is whether at the time of the accident the chauffeur was acting within the scope of his employment, there was evidence that it was the duty of the chauffeur to go for the defendant's children at a certain school, that he was permitted to use the automobile in going to his dinner at his boarding place and to a certain shop on his way to the school, that at the time of the accident he had been to his dinner and had stopped at the shop, but that then, instead of driving directly to the school, he took another and a longer route for the purpose of obliging an acquaintance by taking him to a place to which he wished to go, and that, while he was doing this, the accident happened. The chauffeur testified that he never was instructed by the defendant how to go to the school

and could go there by any route that he chose, that, after the happening of the accident, he told the defendant "the whole story, just the way it was," and that the defendant said that he had the right to be where he was when the accident happened and that there was nothing for him to worry about. *Held,* that the jury could find that this remark of the defendant was an admission by the defendant that, as between him and the chauffeur, the latter properly was driving the automobile at the place of the accident in the performance of his duty to the defendant, and that with this statement there was evidence for the jury that at the time of the accident the chauffeur was acting within the scope of his employment.

Tort for personal injuries sustained on November 10, 1911, when the plaintiff, who was nearly seventy years of age, was crossing Washington Street at or near Boylston Street in the part of Boston called Jamaica Plain, and was knocked down by an automobile owned by the defendant, which was alleged to have been operated negligently by the defendant's servant. Writ dated October 17, 1912.

In the Superior Court the case was tried before *White,* J. The automobile which struck the plaintiff was "owned by the defendant and operated by one Hicks, who was a chauffeur in the general employ of the defendant. There was evidence from which the jury could find that the plaintiff was in the exercise of due care, and that said chauffeur was negligent." The defendant lived in the part of Boston known as Jamaica Plain. Hicks boarded and lodged with one Edward McCarthy. At two o'clock on each of the five school-days of the week, it was the duty of Hicks to be at a certain number in Marlborough Street in Boston, to get the defendant's children who attended school there and to take them home. Going at an ordinary speed it took about twenty minutes to go to the school. At about half past eleven on the day on which the accident occurred Hicks had just got the youngest daughter of the defendant at some place not stated and had taken her to the defendant's house. Hicks then went to McCarthy's and got his dinner. He finished his dinner at about half past twelve, and had an hour and a half within which to go to get the children. He had eaten dinner with McCarthy, and after dinner at half past twelve he took McCarthy from his house to a shop on Green Street where McCarthy, who was a harness maker, had his place of business. The direction in going to the shop on Green Street was directly away from Boston.

As to what happened next Hicks testified as follows: "Mr. McCarthy got out and went into his shop. . . . While I was standing there I was talking to the other man that worked in the shop. A fireman came along, named Lydon; I had a talk with Mr. Lydon. . . . While I was talking with Lydon, he asked me for a ride down the street; I said to him I was going in town, but probably had time enough to take him down a little ways. After that he got in, and I started down Green Street in the direction of Washington. At the time I started, there was on the automobile besides me and Mr. Lydon the other man who was working at [McCarthy's]; he stepped on the running-board and rode down a little ways to Oakdale Street. Lydon hadn't told me just where he wanted to go. I don't remember what was said after that; I intended to turn up one of these streets. . . . Then, after that, I kept going. When I got down to the corner of Green and Washington Streets, nothing was said to me by Lydon or by me to him; I made up my mind I would not go down any further. As a matter of fact, I did take him down Green Street and down Washington, and at some point on Washington Street, I met with an accident. At that time the fireman was in my vehicle, sitting in the back seat. I was on the driver's seat; there was no one else in the automobile; I was operating it, and the accident occurred on Washington Street near Chauncy Place, I was going ten or twelve miles an hour."

Other evidence is described in the opinion.

The judge refused to rule that upon the whole evidence the plaintiff was not entitled to recover, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $2,525. The defendant alleged exceptions, it being stated in the bill of exceptions that "The only question to be determined is whether, at the time of the accident, the said chauffeur was acting within the scope of his employment so that the defendant was legally responsible for his alleged negligent act."

*C. S. Knowles,* for the defendant.

*J. H. Vahey,* for the plaintiff.

SHELDON, J. The liability of the defendant for the negligence of Hicks his chauffeur in driving the defendant's automobile depends upon whether Hicks then was acting within the scope of his employment. *Cain v. Hugh Nawn Contracting Co.* 202

Mass. 237, 239. The jury could find that Hicks was permitted by the defendant to use the automobile in going to his dinner at McCarthy's house and thence to McCarthy's shop, on his way to the school on Marlborough Street. *Reynolds* v. *Denholm*, 213 Mass. 576. But on this occasion, instead of going from McCarthy's shop directly to Marlborough Street by the usual route, he took another and longer route, apparently for the purpose of carrying one Lydon to or toward the place to which Lydon wished to go. It was while driving along Washington Street with Lydon, but in the general direction of the school, that the accident happened.

If these were all the facts, they would show plausible ground for the contention that when Hicks ran into the plaintiff, he was not doing the defendant's work, and was not acting within the scope of his employment, but was going on an independent journey for a purpose of his own, the accommodation of one whom he wished to befriend, and not at that time for the purpose of going to the school to carry the defendant's children home. *McCarthy* v. *Timmins*, 178 Mass. 378. *Fleischner* v. *Durgin*, 207 Mass. 435. *Mitchell* v. *Crassweller*, 13 C. B. 237. *Storey* v. *Ashton*, L. R. 4 Q. B. 476. In that event, it of course would make no difference that he intended, after having accomplished his own independent purpose, to resume the performance of his duty to his master. But Hicks testified that he never was instructed by the defendant how to go to Marlborough Street, and could go thither by any route that he chose. *Ritchie* v. *Waller*, 63 Conn. 155. *Patten* v. *Rea*, 2 C. B. (N. S.) 606. He testified further that after the happening of the accident he told the defendant "the whole story, just the way it was," and that the defendant said that he (Hicks) had a right to be there on Washington Street, that there was nothing for him to worry about. The jury could find that this was an admission by the defendant that, as between himself and Hicks, the latter properly was driving the automobile in this place in the performance of his duty to the defendant. If so, the fact that Hicks had also the purpose of gratifying a private desire of his own in taking the route that he did was immaterial. *Patten* v. *Rea*, 2 C. B. (N. S.) 606.

In its essential features this case belongs to the class of which

*Reynolds* v. *Denholm,* 213 Mass. 576, *Ritchie* v. *Waller,* 63 Conn. 155, *Whatman* v. *Pearson,* L. R. 3 C. P. 422, and *Venables* v. *Smith,* 2 Q. B. D. 279, are examples, rather than to that illustrated by such cases as *McCarthy* v. *Timmins,* 178 Mass. 378, *Fleischner* v. *Durgin,* 207 Mass. 435, *Mitchell* v. *Crassweller,* 13 C. B. 237, and *Storey* v. *Ashton,* L. R. 4 Q. B. 476.

The case rightly was submitted to the jury, and there is no suggestion that full and correct instructions were not given to them.

*Exceptions overruled.*