Thomas, Administrator, Appellant, vs. Lockwood Oil
Company, Respondent.

*April 6—July 13, 1921.*

*Master and servant: Deviation from master's service: Driver, of
delivery truck: Discretion as to route: Loitering: Personal
errand of servant: Volunteer assisting servant: Negligence:
Injury to third person: Liability of master: Trial: Declara-
tions of servant after event: Res gestæ: Impeachment: Use
of adverse examination.*

1. To relieve a master from liability to third persons arising from
his servant's negligence on the ground that the servant had
deviated from the service, such deviation must be so substan-
tial as to amount to a departure therefrom and must be for
purposes entirely personal to the servant.

2. The route to be traveled by an automobile truck driver, in the
absence of express directions from his employer, is discre-
tionary with the driver, and in selecting certain streets, in the
exercise of such discretion, he is still within his master's
service.

3. The driver's act in going around a block unnecessarily for the
purpose of delaying return to his place of employment to
avoid being sent out on another trip is not of itself a de-
parture from the employer's service so as to exonerate the
employer from responsibility for the driver's negligence; nor
did the driver, while headed in a proper direction toward his
master's place of employment, depart from his employment
so as to exonerate the employer from responsibility for the
death of a bicycle rider struck by the truck simply because its
driver had an intention to again drive around the block in
the hope of seeing a lady friend.

4. Where the driver's deviation from his route was slight and
not unusual, the court may as a matter of law determine
that he was still executing the master's business.

5. Where the driver was delivering oil and permitted a friend
who was with him to drive the truck so that he could ascer-
tain the cause of trouble in the operation of the truck and
shift the position of a barrel, the driver's friend, in operating
the truck, was an employee of the owner so as to render the
latter liable to a third person struck by the truck.

6. Declarations of the driver at the police station to which he
had accompanied a policeman from the scene of the injury

are not admissible as part of the *res gestæ;* and testimony as to such declarations was inadmissible without a proper foundation being laid by first interrogating the witness.

7. Where an employee of an adverse party was examined before trial under sec. 4096, Stats., as to statements made by him in an affidavit, without the affidavit itself being offered at the time of such examination, the affidavit was not admissible as independent evidence at the time of the trial.

8. Under sub. 2, sec. 4096, Stats., as amended by ch. 246, Laws 1913, testimony of defendant's employee, taken by plaintiff before trial under such statute, was not available to defendant during the trial in the absence of a showing that such employee could not attend the trial as a witness.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Reversed.*

Plaintiff, the father of Michael Thomas, a boy about thirteen years of age at the time of his death, was appointed administrator and brought this action against the defendant to recover damages for the death of said son.

The defendant corporation was engaged in the business of selling gasoline and oil in the city of Racine. It used a number of automobile trucks for delivery purposes. On July 17, 1920, one such automobile truck was being operated by Arthur Finch, then about nineteen years old, having had some previous experience in driving motor trucks and who had commenced his service for the defendant on that day. He made a round trip in the forenoon and had finished his assigned afternoon delivery about 5 o'clock at a junk yard on the north side of the city. At that time he had a barrel of oil still on the truck which was to be taken back. Shortly after leaving the last point of delivery he met an acquaintance named Larson who proceeded with him. The map on page 488 shows the location and names of the streets that will be referred to in this statement of facts.

Defendant's place of business was near the corner of Racine and Fourteenth streets, close to the tracks of the Chicago, Milwaukee & St. Paul Railway. A school referred

Thomas v. Lockwood Oil Co. 174 Wis. 486.

to in the testimony was on Center street between Tenth and Eleventh streets.

After reaching Sixth and Mead streets Finch drove south on Mead, east on Eighth to Washington avenue, which on all the portions shown on the map was occupied by the double tracks of a street railway. He proceeded south-westerly on Washington avenue to Ninth, east on Ninth to Center street, thence south to Eleventh, thence west to Franklin, thence north on Franklin to Tenth street, east on Tenth again to Center, then south on Center.

A little near the center and on the west side of Center street between Tenth and Eleventh, a pile of brick extended out about ten feet from the curb. Michael Thomas, riding on a bicycle south on Center street, was just going around the pile of brick when he was struck and almost instantly killed by defendant's truck.

Arthur Finch, defendant's driver and employee, was not called as a witness upon the trial by either side. He was examined adversely by plaintiff prior thereto under the provisions of sec. 4096, Stats., and on the trial the plaintiff offered in evidence part of the testimony so taken; among other things the following: "*Q.* Where were you going after you left the Fox junk yard? [This was the last place of delivery that afternoon.] *A.* I was going home. *Q.* Back to the garage? *A.* Yes." And again: "*Q.* So when you left Fox's junk yard you then started back to the garage; is that right? *A.* Yes." That he permitted Larson to take his seat at the driving wheel and operate the truck when they were about the middle of the block on Tenth street between Franklin and Center and that Larson continued to drive until the time of the accident. That his only purpose in letting Larson drive was that he, Finch, might go back and move the barrel to the rear on the truck, and that there was oil dripping off the truck, the barrel was dripping, the transmission was hot and it was smoking. That he had never permitted any one else to drive the truck other than Larson

and had been given no instructions by the company with reference to any one else being permitted or not to drive.

After plaintiff rested his case defendant offered in evidence, by way of defense, certain portions of such examination. To such offer plaintiff's counsel objected, basing the objection upon the portion of sub. 2, sec. 4096, Stats., quoted in the opinion. The objection was overruled. Defendant's counsel then offered from such deposition Finch's testimony as to his procedure after reaching Ninth and Center streets and also that to the effect that he thought it was then too early to go back to the plant; that if he got there too early they would send him out with another load, so he determined to ride around the school to see his girl living on Franklin street; that she was not seen then, and he went around again and got half way around and Larson asked him to let him drive the truck; that he, Finch, then went back on the truck to move the barrel to the end of it so that when they got back to the garage they could get it off quickly and he could get home. That the girl in question was one with whom he had just got acquainted, that he did not know her last name; that he might have gone south on Franklin from Tenth street (this, it should be noted, would have kept him going south on Franklin instead of making the longer turn down Center and Eleventh) ; that he made up his mind to turn over to get onto Franklin street when he came up as far as Eleventh; that he made up his mind to go around to see his friend before he left the junk yard; that the way he took was the shortest way to get there; that at the time he came down to West street and took Larson aboard he expected to go up and see the girl.

Over plaintiff's objection defendant was permitted to read portions of Finch's examination by defendant's counsel, in substance as follows:

"*Q.* Now you didn't want to get back to the garage of the *Lockwood Oil Company*, did you, until pretty near 6 or a quarter of 6? *A.* No. *Q.* Why didn't you want to

go back to the *Lockwood Oil Company?*  *A.* To go over to see my girl.  *Q.* Was there any other reason why you didn't want to get back to the garage?  *A.* Send me out with something else if I got back too quick.  *Q.* So you didn't want to get back so early, you might run the chance of getting sent out again, isn't that right?  *A.* Yes.  *Q.* When you were at Fox's junk shop you made up your mind you would kill time, we will say, by going to see your girl before you went back to the garage, isn't that right?  *A.* Yes."

And also the following:

"I intended to go around the block again after I passed her house and came up to Ninth street.  I had made up my mind I didn't want to get back to the garage until 6 o'clock. The accident happened about 5:30.  That I made up my mind at 5 o'clock when at the junk yard to go to see this girl; that I did not at any time communicate to Larson my intention to so swing around to see this girl; that I thought work stopped at the defendant's at 6 o'clock."

At the close of the testimony the defendant moved for a directed verdict in its behalf on the following grounds: (1) That under the undisputed evidence there was a departure by Finch from his proper course of returning to the defendant's plant; that he went on a personal mission of his own, driving in a direction away from the defendant's premises; that he was intending to go around the block again; that his purpose was to delay in getting back to the place of business so that he would not have to do any more work that day; that he was entirely without the scope of his master's employment, on a personal mission of his own that had no connection directly or indirectly with his duty to his master; (2) on the ground that there was no express or implied authority upon Finch's part to employ or have the services of Larson, and that no emergency existed which made it necessary to have Larson on the car or drive it; (3) that the defendant was in nowise negligent; (4) that upon the undisputed evidence the deceased failed to exercise ordinary care, thereby proximately contributing to his death.

The court granted the motion upon the first of the above grounds. Upon the verdict so directed judgment was entered dismissing the complaint, from which judgment the plaintiff has appealed.

For the appellant there was a brief by *Whaley & Erikson* of Racine, and oral argument by *Vilas H. Whaley.*

For the respondent there was a brief by *Glicksman, Gold & Corrigan,* attorneys, and *Floyd E. Jenkins,* of counsel, all of Milwaukee, and oral argument by *Walter D. Corrigan.*

The following opinion was filed May 3, 1921:

ESCHWEILER, J. Although error was committed in receiving, on defendant's offer, portions of the deposition of Finch taken at plaintiff's instance under sec. 4096, Stats., as we shall discuss later, nevertheless a consideration of his entire evidence satisfies us that it did not warrant the action of the court below.

To relieve a master from liability to third persons arising from a negligent act of the employee on such a ground as contended for by defendant here, the deviation from the master's service must be so substantial as to amount to a departure therefrom and for purposes entirely personal to the servant. *Loomis v. Hollister,* 75 Conn. 718, 55 Atl. 561.

Under Finch's testimony, in proceeding from the place of his last delivery, the junk shop, to defendant's garage, to go along on Center street was the shortest way he knew. Even were Washington avenue the nearer route it was subject to street-car traffic. He had had no express instructions as to the particular streets to travel. In going as he did down Center street, therefore, he was in the exercise of a discretion which must, in the absence of express directions, naturally rest with a driver of such a vehicle, and while in the exercise of such discretion he is manifestly, so far as that feature of it is concerned, still within his master's service. *Mathewson v. Edison E. I. Co.* 232 Mass. 576, 581, 122 N. E. 743; *McKeever v. Ratcliffe,* 218 Mass. 17,

20, 105 N. E. 552; *Hayes v. Wilkins,* 194 Mass. 223, 80 N. E. 449; *Maloy v. Rosenbaum,* 260 Pa. St. 466, 103 Atl. 882.

The fact that Finch had the purpose of delaying his return to the place of employment in order to avoid being sent out on another errand, a point upon which much stress is laid by defendant, certainly cannot of itself be such a departure from the master's service as to thereby relieve the master. The servant who loiters and thereby fails to render to the master full and honest measure is nevertheless, so far as least as third persons are concerned, as much in the master's employ as he who hastens in his task.

Again it is urged that Finch having, as expressed in certain parts of his deposition, immediately on leaving the junk yard formed the intention to make the detour on Franklin street in order to see the girl who lived there, his trip all the way down, or at least at the time of the collision, became a purely personal adventure and therefore a departure from the master's service. The slight deviation required to go around the three sides of the square between Tenth, Eleventh, Center, and Franklin streets, in view of the length of his journey and the nature of his employment, does not warrant the finding that such was a substantial deviation and therefore a departure from the master's service. Had the young lady resided on Center street between Tenth and Eleventh instead of on Franklin street and the driver had the same intention of driving past her house with the hope of seeing her, and with that intention in mind had been driving down Center street at the time of the accident, such mere purpose surely could not have made his being on Center street at the time in question a departure from his employment. The few moments required to run around on to Franklin street had no more substantial effect on his journey than if he had looked for her on Center street.

In any event, at the time of the injury he was back on Center street and headed in the proper direction towards

his master's place of employment. He was then in the master's employ. *Graham v. Henderson,* 254 Pa. St. 137, 98 Atl. 870. That he then had an unexecuted purpose of again running around on Franklin street to again try to see the girl was a purpose which he might have abandoned before reaching the point of turning, and being merely an unexecuted, unexpressed mental purpose of his own cannot be deemed a departure from his master's service. *Fitzgerald v. Boston & N. St. R. Co.* 214 Mass. 435, 439, 101 N. E. 1085. As was said under a state of facts which warranted a similar conclusion to that arrived at here in *Ritchie v. Waller,* 63 Conn. 155, 28 Atl. 29, where the deviation is slight and not unusual the court may, as a matter of law, determine that the servant was still executing the master's business; and we say so here.

We have considered the authorities relied upon by defendant's counsel (*McCarthy v. Timmins,* 178 Mass. 378, 59 N. E. 1038; *Healey v. Cockrill,* 133 Ark. 327, 202 S. W. 229; *Crady v. Greer,* 183 Ky. 675, 210 S. W. 167) and others, but we do not deem them as applicable or controlling upon the facts as they appear in this case.

Respondent asserts that the judgment should be supported upon the other grounds presented by it on its motion for a directed verdict, viz. the contributory negligence of the deceased; and that in any event no liability of defendant for the injury arose because Larson, not Finch, was driving. The trial court expressly refused to uphold defendant's contention on such grounds, and we think very properly.

The question of contributory negligence by the boy who was killed was a question for the jury.

The driver, Finch, had received no instructions as to permitting or not permitting any one else than himself to drive the truck. He testified that Larson, who had charge of the operation of the truck at the time of the injury to the boy, was driving in a proper manner and that there was nothing

that could have been done by either Larson or himself to have avoided the injury.

At the time that Larson had requested and obtained permission to drive the automobile Finch had the purpose of going back on the body of the truck to ascertain if possible what was the trouble with the operation of the truck and also to shift the position of the barrel of oil so that it would be more convenient for removal upon returning to the garage, thereby permitting his more speedy relief from his employment. All of this was within the field of his employment, and Larson was a means used by Finch in carrying it out.

We think, therefore, that for the purposes of this case as the record discloses the situation, Larson, though in a measure a volunteer without expectation of compensation, nevertheless so far as any third person would be concerned was in defendant's employment at the time of the injury. He was fully as much a fellow-servant of Finch and an employee of defendant as was the boy injured by the falling of the heavy machinery on the depot platform in *Wagner v. Plano M. Co.* 110 Wis. 48, 85 N. W. 643, or the bystander assisting in laying of water pipes in *Johnson v. Ashland W. Co.* 71 Wis. 553, 556, 37 N. W. 823. These two cases were expressly recognized as correctly stating the law on such a point in *Johnson v. Berwind F. Co.* 154 Wis. 1, 3, 141 N. W. 1018. A similar result was arrived at in the case of *Geiss v. Twin City T. Co.* 120 Minn. 368, 139 N. W. 611, appearing with note in 45 L. R. A. N. s. 382. See, also, *Prince v. Taylor* (Tex.) 171 S. W. 826.

The respondent relies upon the case of *Thyssen v. Davenport I. & C. S. Co.* 134 Iowa, 749, 112 N. W. 177, 13 L. R. A. N. s. 572, but that case held that the act complained of there was not actionable negligence, which necessarily disposed of the case and made unnecessary any determination on such a question as is here presented.

Thomas v. Lockwood Oil Co. 174 Wis. 486.

Appellant plaintiff alleges in his assignment of errors certain rulings of the trial court in the matter of evidence. He offered to prove certain statements alleged to have been made by Finch at the police station after he had accompanied the policeman from the scene of the injury to the station. These statements could certainly not be considered as part of the *res gestæ* and admissible on that ground, nor had any proper foundation been laid for introducing them by first interrogating the witness Finch, either on his examination under sec. 4096, Stats., or by calling him as an adverse witness upon the trial. The ruling was correct.

A map of Racine upon which it was claimed the witness Finch had marked with lead-pencil on his examination the streets traversed by him was admitted. This ruling was immaterial in view of our holding as to his deposition *infra*.

Plaintiff offered in evidence an affidavit made by Finch about a month after the accident and verified before plaintiff's counsel. This was used by plaintiff's counsel in the examination of Finch under sec. 4096, Stats., and several statements therein contained were read to the witness and he was interrogated concerning them. The affidavit itself, however, was not offered at the time of such examination. There was no foundation therefore laid upon which such affidavit as a whole could be offered as independent evidence, as was attempted to be done by plaintiff, and the court was right in refusing its admission.

Plaintiff read to the jury certain portions of the deposition, taken on his behalf under sec. 4096, Stats., of the witness Finch, defendant's employee, before trial. After plaintiff rested defendant offered as part of his case other portions of such deposition, some of which portions were elicited by the questions of plaintiff's counsel and others in response to defendant's counsel. Upon the portions so offered by defendant relating in substance to Finch's intent and purpose in driving around on Franklin street and as to

his loitering on the way back to defendant's garage, the trial
court predicated its ruling in defendant's favor.   Such evi-
dence, therefore, was in substance and effect defensive
matter.

There was no showing made that Finch was not present
at the trial or could not be produced as a witness.   It is not
necessary, therefore, that we should rule whether such por-
tions of the deposition as tended to prove the substance of
defendant's defense could be properly admitted even were
it shown that Finch could not attend as a witness.   It was,
however, clearly inadmissible as the record then stood.

Prior to the enactment of ch. 246, Laws 1913, the plaint-
iff himself could not have used the deposition of Finch, de-
fendant's employee, were Finch attainable as a witness
(*Anderson v. Chicago B. Co.* 127 Wis. 273, 106 N. W. 1077,
decided in 1906) ; such rule not applying, however, as to
parties or the officers of corporations when parties.   *J. H.
Clark Co. v. Rice,* 127 Wis. 451, 466, 106 N. W. 231.

By the chapter just mentioned there was added to sub. 2,
sec. 4096, as it then stood the following:

"Such portions of any such examination or examinations
of any of the persons mentioned as are relevant to the issues
in the case may be offered by the party taking any such
examination or examinations and shall be received upon the
trial of the action or proceeding in which it is taken, not-
withstanding the person who was so examined may be
present at the trial or proceeding."

This evidently was for the purpose of changing the rule as
announced in *Anderson v. Chicago B. Co., supra,* but it goes
no further.

Neither of the cases cited and relied upon by defendant,
of *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382, 80
N. W. 467, or *Gutzman v. Clancy,* 114 Wis. 589, 90 N. W.
1081, met the present proposition.

The scope and purpose of sec. 4096, Stats., is fully dis-
cussed in the case of *Lange v. Heckel,* 171 Wis. 59, 69, 175

N. W. 788, where it was held that a party who himself had
been examined under sec. 4096, Stats., by the adverse party
could not properly offer such examination on his own behalf
on the trial, there being no showing made that he could not
be present to testify. The statute gives no express or im-
plied authority for such use of the deposition as was made
by defendant on the trial, nor can we find any support for
its reception in any of the decisions. The portions thereof
upon which defendant predicated its defense were therefore
improperly received.

*By the Court.*—Judgment reversed, and cause remanded
for a new trial.

A motion for a rehearing was denied, with $25 costs, on
July 13, 1921.