Frank E. MARSHALL,
Plaintiff-Appellant,

v.

Robert H. NUGENT, Defendant-Appellee.

SOCONY–VACUUM OIL COMPANY,
Incorporated, Defendant-Appellant,

v.

Frank E. MARSHALL,
Plaintiff-Appellee.

SOCONY–VACUUM OIL COMPANY,
Incorporated, Defendant-Appellant,

v.

Robert H. NUGENT, Defendant-Appellee.

Nos. 4866–4868.

United States Court of Appeals
First Circuit.

Argued Jan. 4, 1955.

Decided May 13, 1955.

Rehearing Denied in No. 4867
May 31, 1955.

Donald R. Bryant, Dover, with whom Burns, Calderwood & Bryant, Dover, was on the brief, for Frank E. Marshall.

Arthur H. Nighswander, Laconia, and Walter D. Hinkley, Lancaster, with whom Hinkley & Hinkley, Lancaster, and Nighswander, Lord & Bownes, Laconia, were on the brief, for Robert H. Nugent.

Robert B. Hamblett, Nashua, with whom Charles K. Hamblett and Hamblett, Moran & Hamblett, Nashua, were on the brief, for Socony-Vacuum Oil Co., Inc.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

These three appeals relate to the same motor vehicle accident, in which Frank E. Marshall received personal injuries.

On the morning of December 17, 1951, a Chevrolet car owned and operated by Walter G. Harriman was proceeding on a public highway from Colebrook, New Hampshire, in a southerly direction bound for North Stratford, New Hampshire. Marshall was riding as a passenger in the front seat of the Chevrolet. Harriman was a son-in-law of Marshall and also his employee in an insurance business conducted under the name of the Frank E. Marshall Agency. They were bound for North Stratford to enable Marshall to keep a business appointment.

As Harriman was driving his car on the right-hand side, or westerly lane of the highway, at 30 to 35 miles per hour, he approached a curve in the road. At this point the highway ran uphill and curved rather sharply to Harriman's right. The curve was heavily banked, the east side being higher than the west side. On the day in question the road was covered with hard-packed snow and ice and was quite slippery. Proceeding in the opposite direction, i. e., northerly and headed for Colebrook, was a heavy oil truck owned by Socony-Vacuum Oil Co., Inc., and driven by its servant, Warren K. Prince, undoubtedly then in the scope of his employment. Upon ample testimony the jury were warranted in finding that after the oil truck loomed over the crest of the hill it "cut the corner" by swinging over to the westerly side of the highway (to Prince's left) and proceeded down the banked curve in that manner. In this situation the truck and the Chevrolet, then approximately 300 ft. or more apart, were headed for a collision. There was credible evidence that Harriman let up on his accelerator and blew his horn, but as the truck did not get back promptly to its side of the road Harriman turned to the right into the snowbank at the west side of the road to slow down; the Chevrolet went into a skid for about 50 ft. and came to a stop completely off the highway on the westerly side and at right angles with the road.

Prince stopped his oil truck on the easterly, or to him the right-hand, side of the highway, about opposite the stalled Chevrolet. Harriman and Marshall got out of the car. Prince inquired if

they were "okay"—which they were at that time—and offered to yank the Chevrolet back into the highway if Harriman had a chain.

At this time the oil truck, blocking as it was the eastern lane of the highway, was stopped in a dangerous place. The danger was not with reference to southbound traffic, for the Chevrolet and the stopped truck were visible to such traffic for a straightaway distance of 1200 to 1500 ft. Rather, the danger was with reference to northbound traffic. Drivers in cars proceeding in a northerly direction could not see the truck standing in the "blind spot" below until they arrived almost at the crest of the hill, when they would realize that there was not room to pass the truck on the right-hand or easterly side, and the risk was obvious that in the existing weather conditions they might go into a skid while attempting to swing over to the left on the banked curve in order to pass between the Chevrolet and the truck. Also there would be danger from northbound traffic during the blocking of the highway by the anticipated operation of towing the Chevrolet back into the highway.

Prince, who was very familiar with this particular portion of the highway, recognized the danger inherent in the situation, for he remarked to Messrs. Harriman and Marshall that his truck was stopped in a rather dangerous position and that someone ought to go up the grade to warn any approaching northbound traffic.

In response to this obviously reasonable suggestion from Prince, Marshall undertook to go up the hill to warn any cars that might be approaching the crest in a northerly direction. Harriman continued the operation of getting out his chain and affixing it to the spring shackle of his car. Meanwhile, Prince let the truck stand still on the east side of the highway, when it might have been safer to have pulled over in a matter of moments to the other side of the highway to await the towing operation. Having proceeded southerly for perhaps 75 or 80 ft., walking on his right-hand side of the highway, about 4 ft. from the snowbank on the westerly side, Marshall perceived coming over the crest of the hill a car driven by Robert H. Nugent. This car would have presented no danger to Marshall if it could have proceeded on its right-hand or easterly lane, but this was impossible because the oil truck was blocking this lane. Marshall waved his arms in warning. Nugent turned his car toward the left. It soon went into a skid, crossing to the left-hand side of the banked curve, crashing into a plank guard fence on the westerly side of the highway, and immediately thereafter striking and severely injuring Marshall. It all happened so quickly that Marshall was unable to get out of the way. Nugent's car continued more or less out of control until its front bumper guard struck and dented the rear fender of Harriman's stalled Chevrolet, and there Nugent's car stopped. The injury to Marshall occurred a very short time, perhaps a minute or two, or maybe less, after Marshall had started up the hill in response to Prince's suggestion.

Marshall filed his complaint in the court below against both Socony-Vacuum Oil Co., Inc., and Nugent, charging them as joint tortfeasors, each legally responsible for the plaintiff's personal injuries. There was complete diversity of citizenship, since Marshall was a citizen of New Hampshire, Nugent a citizen of Vermont, and Socony a New York corporation. After a rather lengthy trial, the jury reported a verdict in favor of Marshall as against Socony in the sum of $25,000, and a verdict in favor of the defendant Nugent. The district court entered judgments against Socony and in favor of Nugent in accordance with the verdict.

### No. 4867.

This is an appeal by Socony from the judgment against it in favor of Marshall. Appellant has presented a great number of points, most of which do not merit extended discussion.

The most seriously pressed contentions are that the district court was in error

in refusing Socony's motion for a directed verdict in its favor, made at the close of all the evidence. The motion was based on several grounds, chief of which were (1) that Marshall was guilty of contributory negligence as a matter of law, (2) that if Socony's servant Prince were found to have been negligent in "cutting the corner" on the wrong side of the road, and thus forcing Harriman's car off the highway, Marshall suffered no hurt from this, and such negligent conduct, as a matter of law, was not the proximate cause of Marshall's subsequent injuries when he was run into by Nugent's car, and (3) that in so far as Prince might be found to have been negligent in stopping his truck and letting it stand in the "blind spot" at the foot of the hill, so as to block the right-hand lane of cars coming northerly over the crest of the hill, this negligent conduct was outside the scope of his employment, and hence as a matter of law was not chargeable to his employer, since it was no part of his job to offer a "good Samaritan" towage service to the disabled Chevrolet.

As to (1), it is abundantly clear that the question of Marshall's contributory negligence presented a proper jury issue. No doubt Marshall would have been safer from the risks of traffic accidents if he had got out of the stalled Chevrolet and had seated himself on the snowbank well off the highway, to await the resumption of his journey in the Chevrolet. Instead he chose to get out into the highway and at Prince's suggestion to walk up the grade to warn northbound traffic while Prince and Harriman were preparing to tow the Chevrolet back onto the highway. In one loose sense he "assumed the risk", i. e., the physical risk, in thus subjecting himself to the possibility of injury in a traffic accident. But it is a complete misconception to infer from that fact, as a matter of law, that he was "negligent" in respect of his personal safety. The New Hampshire cases are not clouded by this misconception. See Kambour v. Boston & Maine R. R., 1913, 77 N.H.

33, 86 A. 624, 45 L.R.A.,N.S., 1188; Prichard v. Town of Boscawen, 1916, 78 N.H. 131, 133, 97 A. 563; Piateck v. Swindell, 1930, 84 N.H. 402, 404, 151 A. 262; Vidal v. Errol, 1932, 86 N.H. 1, 6–7, 162 A. 232; Burns v. Cote, 1933, 86 N.H. 167, 164 A. 771. When negligence of a defendant is in issue, the plaintiff in such a case does not prove his case by showing that the defendant chose to pursue a certain course of conduct, well aware that it involved some risk of injury to others. The plaintiff must satisfy the jury, further, that it was an unreasonable risk, i. e., that it was such a risk that a reasonable man under all the circumstances would refrain from running it. See Osborne v. Montgomery, 1931, 203 Wis. 223, 232–233, 234 N.W. 372; Marcienowski v. Sanders, 1925, 252 Mass. 65, 68, 147 N.E. 275; Beatty v. Central Iowa R. Co., 1882, 58 Iowa 242, 12 N.W. 332. The same thing is true where a defendant offers the affirmative defense that the plaintiff by negligence in respect of his own safety was a proximate cause of his own injury; this defense is not established by proof that the plaintiff voluntarily encountered a known risk, unless it was an unreasonable risk —a risk that a reasonable person in the plaintiff's position would not have undergone. Clayards v. Dethick, 12 Q.B. 439 (1848); O'Neill v. City of Port Jervis, 1930, 253 N.Y. 423, 171 N.E. 694. Of course in the present case the plaintiff voluntarily assumed some physical risk in venturing out into the highway at all on the morning of December 17, 1951. So far as the possibility of traffic accidents was concerned, he would have been safer had he stayed on a rocking chair in his living room; but it would be preposterous to say that in setting out in the Chevrolet he thereby disclosed himself to have been "negligent" with respect to his personal safety. On the facts above recited, and other facts in the record which we have not bothered to rehearse, a jury might well properly have found that Marshall, in order to render assistance during the operation of getting the Chevrolet back on the road

so that he could resume his business trip therein, acted as a reasonable person in proceeding up the hill to warn the northbound traffic, and was not guilty of any negligence in failing to sidestep the skidding Nugent car.

The situation in the case at bar is to be sharply distinguished from that where a plaintiff enters into a voluntary relationship with a defendant, as by coming on his premises as a licensee, well aware of a risk incident to his presence there. See Paine v. Young Men's Christian Ass'n, 1940, 91 N.H. 78, 13 A.2d 820, cited by appellant. There the plaintiff is barred, not by contributory negligence as an affirmative defense to a prima facie liability, but because the land occupier has not been guilty of any breach of duty owed to the licensee. The distinction is elaborated more fully in a Comment by Professor Seavey in 65 Harv.L.Rev. 623–27.

Coming then to contention (2) above mentioned, this has to do with the doctrine of proximate causation, a doctrine which appellant's arguments tend to make out to be more complex and esoteric than it really is. To say that the situation created by the defendant's culpable acts constituted "merely a condition", not a cause of plaintiff's harm, is to indulge in mere verbiage, which does not solve the question at issue, but is simply a way of stating the conclusion, arrived at from other considerations, that the causal relation between the defendant's act and the plaintiff's injury is not strong enough to warrant holding the defendant legally responsible for the injury.

■ The adjective "proximate", as commonly used in this connection, is perhaps misleading, since to establish liability it is not necessarily true that the defendant's culpable act must be shown to have been the next or immediate cause of the plaintiff's injury. In many familiar instances, the defendant's act may be more remote in the chain of events; and the plaintiff's injury may more immediately have been caused by an intervening force of nature, or an intervening act of a third person whether culpable or not, or even an act by the plaintiff bringing himself in contact with the dangerous situation resulting from the defendant's negligence. See Johnson v. Kosmos Portland Cement Co., 6 Cir., 1933, 64 F.2d 193; Mitchell v. Churches, 1922, 119 Wash. 547, 206 P. 6, 36 A.L.R. 1132; Morrison v. Medaglia, 1934, 287 Mass. 46, 191 N.E. 133; Smith v. Twin State Gas & Electric Co., 1928, 83 N.H. 439, 144 A. 57, 783, 61 A.L.R. 1015. Therefore, perhaps, the phrase "legal cause", as used in Am.L.Inst., Rest. of Torts § 431, is preferable to "proximate cause"; but the courts continue generally to use "proximate cause", and it is pretty well-understood what is meant.

■ Back of the requirement that the defendant's culpable act must have been a proximate cause of the plaintiff's harm is no doubt the widespread conviction that it would be disproportionately burdensome to hold a culpable actor potentially liable for all the injurious consequences that may flow from his act, i. e., that would not have been inflicted "but for" the occurrence of the act. This is especially so where the injurious consequence was the result of negligence merely. And so, speaking in general terms, the effort of the courts has been, in the development of this doctrine of proximate causation, to confine the liability of a negligent actor to those harmful consequences which result from the operation of the risk, or of a risk, the foreseeability of which rendered the defendant's conduct negligent.

Of course, putting the inquiry in these terms does not furnish a formula which automatically decides each of an infinite variety of cases. Flexibility is still preserved by the further need of defining the risk, or risks, either narrowly, or more broadly, as seems appropriate and just in the special type of case.

Regarding motor vehicle accidents in particular, one should contemplate a variety of risks which are created by negligent driving. There may be injuries resulting from a direct collision between the carelessly driven car and another vehicle. But such direct colli-

sion may be avoided, yet the plaintiff may fall and injure himself in frantically racing out of the way of the errant car. See Tuttle v. Atlantic City R. Co., 1901, 66 N.J.L. 327, 49 A. 450, 54 L.R.A. 582. Or the plaintiff may be knocked down and injured by a human stampede as the car rushes toward a crowded safety zone. Compare Washington & G. R. Co. v. Hickey, 1897, 166 U.S. 521, 17 S.Ct. 661, 41 L.Ed. 1101. Or the plaintiff may faint from intense excitement stimulated by the near collision, and in falling sustain a fractured skull. Comstock v. Wilson, 1931, 257 N.Y. 231, 177 N.E. 431, 76 A.L.R. 676. Or the plaintiff may suffer a miscarriage or other physical illness as a result of intense nervous shock incident to a hair-raising escape. Mitnick v. Whalen Brothers, Inc., 1932, 115 Conn. 650, 163 A. 414. This bundle of risks could be enlarged indefinitely with a little imagination. In a traffic mix-up due to negligence, before the disturbed waters have become placid and normal again, the unfolding of events between the culpable act and the plaintiff's eventual injury may be bizarre indeed; yet the defendant may be liable for the result. See Bunting v. Hogsett, 1891, 139 Pa. 363, 21 A. 31, 12 L.R.A. 268. In such a situation, it would be impossible for a person in the defendant's position to predict in advance just how his negligent act would work out to another's injury. Yet this in itself is no bar to recovery. Hill v. Winsor, 1875, 118 Mass. 251; Derosier v. New England Tel. & Tel. Co., 1925, 81 N.H. 451, 462, 130 A. 145.

■ When an issue of proximate cause arises in a borderline case, as not infrequently happens, we leave it to the jury with appropriate instructions. We do this because it is deemed wise to obtain the judgment of the jury, reflecting as it does the earthy viewpoint of the common man—the prevalent sense of the community—as to whether the causal relation between the negligent act and the plaintiff's harm which in fact was a consequence of the tortious act is sufficiently close to make it just and expedi-

ent to hold the defendant answerable in damages. That is what the courts have in mind when they say the question of proximate causation is one of fact for the jury. Derosier v. New England Tel. & Tel. Co., 1925, 81 N.H. 451, 462, 130 A. 145; Ela v. Postal Telegraph Cable Co., 1901, 71 N.H. 1, 3, 51 A. 281. It is similar to the issue of negligence, which is left to the jury as an issue of fact. Even where on the evidence the facts are undisputed, if fair-minded men might honestly and reasonably draw contrary inferences as to whether the facts do or do not establish negligence, the court leaves such issue to the determination of the jury, who are required to decide, as a matter of common-sense judgment, whether the defendant's course of conduct subjected others to a reasonable or unreasonable risk, i. e., whether under all the circumstances the defendant ought to be recognized as privileged to do the act in question or to pursue his course of conduct with immunity from liability for harm to others which might result. Woodward v. Atlantic Coast Line R. R., 5 Cir., 1932, 57 F.2d 1019.

■ In dealing with these issues of negligence and proximate causation, the trial judge has to make a preliminary decision whether the issues are such that reasonable men might differ on the inferences to be drawn. This preliminary decision is said to be a question of law, for it is one which the court has to decide, but it is nevertheless necessarily the exercise of a judgment on the facts, just as an appellate court may have to exercise a judgment on the facts, in reviewing whether the trial judge should or should not have left the issue to the jury. See Channell v. Sampson, 1 Cir., 1939, 108 F.2d 315.

■ Exercising that judgment on the facts in the case at bar, we have to conclude that the district court committed no error in refusing to direct a verdict for the defendant Socony on the issue of proximate cause.

■ In the first place, the question of Socony's liability here does not depend

upon a determination of what is the New Hampshire law with reference to the so-called "rescue" doctrine. That doctrine is a refinement of, or a special application of, the generally recognized rule that for a plaintiff to establish a breach of duty by the defendant predicated upon negligence, he must show that the defendant's conduct was antecedently negligent in relation to the plaintiff, or to a class of persons of which the plaintiff proved to be one; it is not enough to show that the defendant was negligent only with reference to the interests of some third person. See Palsgraf v. Long Island R. Co., 1928, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253; Cote v. Litawa, 1950, 96 N.H. 174, 176, 71 A.2d 792, 18 A.L.R.2d 216. Notwithstanding this general rule, it is held in most jurisdictions that when the defendant is negligent in that he puts X or X's property in undue peril, he may at the same time be deemed to be negligent with relation to potential rescuers as a class, i. e., to persons who, though not in a position of primary danger from defendant's negligent conduct, nevertheless may be stimulated to undertake the rescue of X, or X's property, from the perils created by defendant's negligent conduct, as defendant ought to have foreseen. See Rest. of Torts §§ 294, 445, 472. The New Hampshire cases have had some difficulty with this rescue doctrine. See Glines v. Maine Central R. R., 1947, 94 N.H. 299, 302–303, 52 A.2d 298.

Whatever may be the New Hampshire law in the foregoing respect, the case at bar presents a quite different situation. Plaintiff Marshall was a passenger in the oncoming Chevrolet car, and thus was one of the persons whose bodily safety was primarily endangered by the negligence of Prince, as might have been found by the jury, in "cutting the corner" with the Socony truck in the circumstances above related. In that view, Prince's negligence constituted an irretrievable breach of duty to the plaintiff. Though this particular act of negligence was over and done with when the truck pulled up alongside of the stalled Chevrolet without having actually collided with it, still the consequences of such past negligence were in the bosom of time, as yet unrevealed.

If the Chevrolet had been pulled back onto the highway, and Harriman and Marshall, having got in it again, had resumed their journey and had had a collision with another car five miles down the road, in which Marshall suffered bodily injuries, it could truly be said that such subsequent injury to Marshall was a consequence in fact of the earlier delay caused by the defendant's negligence, in the sense that but for such delay the Chevrolet car would not have been at the fatal intersection at the moment the other car ran into it. But on such assumed state of facts, the courts would no doubt conclude, "as a matter of law", that Prince's earlier negligence in cutting the corner was not the "proximate cause" of this later injury received by the plaintiff. That would be because the extra risks to which such negligence by Prince had subjected the passengers in the Chevrolet car were obviously entirely over; the situation had been stabilized and become normal, and, so far as one could foresee, whatever subsequent risks the Chevrolet might have to encounter in its resumed journey were simply the inseparable risks, no more and no less, that were incident to the Chevrolet's being out on the highway at all. But in the case at bar, the circumstances under which Marshall received the personal injuries complained of presented no such clear-cut situation.

As we have indicated, the extra risks created by Prince's negligence were not all over at the moment the primary risk of collision between the truck and the Chevrolet was successfully surmounted. Many cases have held a defendant, whose negligence caused a traffic tie-up, legally liable for subsequent property damage or personal injuries more immediately caused by an oncoming motorist. Morrison v. Medaglia, 1934, 287 Mass. 46, 191 N.E. 133; Rovinski v. Rowe, 6 Cir., 1942, 131 F.2d 687; Vadurro v. Yellow Cab Co., 1950,

6 N.J. 102, 77 A.2d 459. This would particularly be so where, as in the present case, the negligent traffic tie-up and delay occurred in a dangerous blind spot, and where the occupants of the stalled Chevrolet, having got out onto the highway to assist in the operation of getting the Chevrolet going again, were necessarily subject to risks of injury from cars in the stream of northbound traffic coming over the crest of the hill. It is true, the Chevrolet car was not owned by the plaintiff Marshall, and no doubt, without violating any legal duty to Harriman, Marshall could have crawled up onto the snowbank at the side of the road out of harm's way and awaited there, passive and inert, until his journey was resumed. But the plaintiff, who as a passenger in the Chevrolet car had already been subjected to a collision risk by the negligent operation of the Socony truck, could reasonably be expected to get out onto the highway and lend a hand to his host in getting the Chevrolet started again, especially as Marshall himself had an interest in facilitating the resumption of the journey in order to keep his business appointment in North Stratford. Marshall was therefore certainly not an "officious intermeddler", and whether or not he was barred by contributory negligence in what he did was a question for the jury, as we have already held. The injury Marshall received by being struck by the Nugent car was not remote, either in time or place, from the negligent conduct of defendant Socony's servant, and it occurred while the traffic mix-up occasioned by defendant's negligence was still persisting, not after the traffic flow had become normal again. In the circumstances presented we conclude that the district court committed no error in leaving the issue of proximate cause to the jury for determination.

█ Of course, the essential notion of what is meant by "proximate cause" may be expressed to the jury in a variety of ways. We are satisfied in the present case that the charge to the jury accurately enough acquainted them with the nature of the factual judgment they were called upon to exercise in their determination of the issue of proximate cause.[1]

---

**1.** The following extract is taken from the charge to the jury in this case on the issue of proximate cause:

"* * * If the operator of the truck did so cause the Harriman car to leave the highway, and the truck driver was negligent, then you are to consider the principle of the chain of causation.

"You are instructed that in many cases, after an act of negligence has occurred, another force may intervene, and become the sole proximate cause of the accident, and in such an event, if you find such to be the fact in the present case, there could be no recovery against the defendant Socony.

"On the other hand, it is the law that whoever does an unlawful act is answerable for all the consequences that may ensue in the ordinary course of events, even though such consequences are immediately and directly brought about by an intervening cause. If, in fact, such intervening cause was set in motion or made probable by the act of the original wrongdoer, and if the consequences are such as might with reasonable diligence have been foreseen, the test is whether or not there was an unbroken connection between the wrongful act and the injury. Did the acts constitute a succession of events so linked together as to make a natural whole, or was there some other new, independent cause intervening between the original wrong and the injury?

"You are instructed that the driver of an automobile which is negligently operated by him in such a manner as to place others in a position where they are struck and injured by an automobile operated by a third person may be held liable therefor, where it is established that such negligence was the proximate cause of the resulting injuries. The fact that the driver of a third car was also negligent is not a defense, provided it is established by the evidence that both drivers were negligent, and that their concurrent negligence was the proximate cause of the resulting injury. It is, of course, essential to a recovery against the first wrongdoer that it be established by the evidence that there was a causal connection between his negligent conduct and the final resulting injury. The ultimate test is whether it appears from all the evidence that the negligence of the first wrongdoer was such that it could have

The third major contention of appellant, in support of its motion for a directed verdict, was based upon the assumption that the jury might find as a fact against plaintiff's preferred theory of fault, *viz.*, that Prince had "cut the corner" on the wrong side of the road in coming down the hill. With that possibility in mind, plaintiff had an alternative theory of fault, *viz.*, that Prince created an unnecessary and unreasonable risk in stopping the truck, and letting it stand, in the blind spot where it blocked the right-hand lane of northbound traffic; that if Prince had not done so, Nugent would not have been under the necessity of swinging over to the left, and thus would not have struck Marshall, who was walking up the hill on the westerly side. Socony's point is that, granting all this to be true, such negligent conduct by Prince was outside the scope of his employment, and thus not chargeable to Socony, since Prince's motive in stopping the truck there was to offer assistance to a disabled motorist, a gratuitous service outside the scope of his job.

Appellant's point is not well-taken. It might be that, if Prince had left the truck and had gone over to assist the disabled motorist, some act of negligence committed by Prince while so engaged would be outside the scope of his employment. But here, Prince never abandoned custody of the truck, and so far as the presence of the standing truck at that place constituted an undue risk of harm to third persons, this was due to conduct of Prince within the scope of his employment. The distinction is made clear in Rest. of Agency § 240, and in Hayes v. Wilkins, 1907, 194 Mass. 223, 80 N.E. 449, 9 L.R.A.,N.S., 1033. Certainly the

brief incidental stopping of the truck while in the course of an authorized journey was not, as Socony must contend, conduct on the part of Prince outside the scope of his employment as a matter of law. Harrison County Motor Car Co. v. Clarke, 1930, 232 Ky. 820, 24 S.W.2d 595. Indeed we question whether the jury should even have been permitted to find that such conduct was outside the scope of Prince's employment. At any rate, the trial judge left the issue of scope of employment to the jury, under instructions which, if anything, were unduly favorable to the defendant; and certainly the defendant has no just cause to complain.

The district court told the jury that plaintiff Marshall was not, on the basis of imputed negligence, chargeable with any possible negligence of Harriman in the operation and management of the Chevrolet car at the time and place of the accident. In so charging, the district court committed no error. The car belonged to Harriman and he was in exclusive possession and control of it. It is true that Harriman was an employee of Marshall in the insurance business; but there was nothing in the evidence to indicate that under the terms and conditions of employment Harriman had agreed to use his car in Marshall's business subject to Marshall's control in the details of operation. Under these circumstances Harriman was not in the relation of servant to Marshall in the operation of the car. McCarthy v. Souther, 1927, 83 N.H. 29, 37–38, 137 A. 445; Hutchins v. John Hancock Mutual Life Ins. Co., 1937, 89 N.H. 79, 192 A. 498; Rest. of Torts §§ 485, 491.

In addition to the main contentions previously dealt with, appellant has ad-

---

been properly said that it could have been the proximate cause of the later injury; in other words, whether in all the circumstances surrounding the situation he ought reasonably to have foreseen that the later consequences might occur as a result of his negligent acts or omissions. "In negligence cases, the law recognizes that there may be more than one proximate cause of the same injury, and

where a chain of events has once been started, due to the negligence of the driver of an automobile, he may be liable for all the mishaps which are, in fact, the proximate results of his unlawful conduct. "The chain of causation is not broken by an intervening act which is a normal reaction to the stimulus of a situation created by negligence."

vanced a great variety of other alleged errors by the trial judge in the admission and exclusion of evidence, in the charge to the jury and the failure to charge as requested. We have examined the points urged and have concluded that any errors of the trial judge in these respects, if errors there were, could not possibly have had such prejudicial effect against Socony as to justify us in upsetting the jury verdict and sending the case back for a new trial.

 We think we ought to add an incidental comment with reference to the numerous alleged errors in the failure to charge as requested. Prior to the giving of the charge to the jury, the defendant Socony had submitted to the court a large number of requested charges. Rule 51, 28 U.S.C.A., provides that no party may assign as error the failure to give a requested instruction "unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The object of this rule is to afford the trial judge an opportunity upon second thought, and before it is too late, to correct any inadvertent or erroneous failure to charge. The rule also serves to lessen the potential burden of appellate courts by diminishing the number of rulings at the trial which they may be called upon to review. In this case, after the district judge had completed his charge, counsel for the defendant Socony spoke to the court as follows: "The defendant Socony-Vacuum excepts to the refusal of the Court to give defendant Socony-Vacuum's Requests for Instructions No. 1, 3, 5, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, and 57, insofar as they were not given." This statement by counsel certainly could have been of no practical assistance to the court and was not in compliance with the spirit of the rule; there was a complete failure to point out to the court "distinctly" which of the large number of requests, or parts thereof, had not, in the opinion of counsel, been substantially embodied in the charge. Cf. O'Connor v. Ludlam, 2 Cir., 1937, 92 F.2d 50, 54.

### No. 4866.

This is an appeal by plaintiff Marshall from the judgment entered in favor of codefendant Nugent pursuant to the jury verdict.

 We find no substantial or prejudicial error at the trial which would necessitate our overturning of the verdict in favor of Nugent.

 Plaintiff also moved in the district court for a new trial, in the case of codefendant Nugent, on the ground that the verdict was against the weight of the evidence. It is true that on the evidence a pretty strong case was presented for negligence on the part of Nugent. But the plaintiff did not contend, indeed would not have been entitled to contend, that the evidence pointing to negligence on Nugent's part was so overwhelming that this issue should have been withdrawn from the jury by a binding instruction; and the district court, under appropriate instructions, left it to the jury to determine whether under all the circumstances Nugent was guilty of negligence. What we said in Peterman v. Indian Motorcycle Co., 1 Cir., 1954, 216 F.2d 289, 292–293, is applicable here:

"On the state of the record, as above outlined, we cannot say that the trial court committed an abuse of discretion in denying the motion for a new trial, in so far as that motion was based upon the ground that the verdict of the jury was so 'decidedly against the evidence' as to shock the conscience. Under our jury system, reasonably disputable issues of fact are to be resolved by the jury, and if a case is properly submitted to the jury's determination, the losing party is not entitled as a matter of right to have a second chance upon a new trial before a different jury, even though the evi-

dence submitted would have warranted the opposite verdict, and even though the trial judge, had he been sitting without a jury, might have found the facts the other way. This is so even in the case of a verdict for a defendant corporation in a personal injury case. It is only in an extreme and unusual case that an appellate court would be justified in concluding that the trial judge committed an abuse of discretion in refusing to grant a new trial on this particular ground."

### No. 4868.

In this case, Socony has appealed from the judgment in favor of its codefendant Nugent.

 Socony made no claim of right against Nugent in the district court. If Socony and Nugent had both been held negligent and legally responsible for Marshall's injuries, then it may possibly be, under New Hampshire law, that Socony would be entitled to be indemnified by Nugent for the amount paid by Socony in satisfaction of their common liability—this upon the theory that after Socony's servant had done the negligent act which forced the Chevrolet off the road, Nugent came along and had a later opportunity, in the exercise of due care, to avoid inflicting the injuries upon Marshall. Compare Nashua Iron & Steel Co. v. Worcester & Nashua R. Co., 1882, 62

N.H. 159. Whether that is so we do not have to decide, for Socony did not seek to litigate this issue against Nugent in the district court. Socony did not file a cross-claim to that effect against its co-defendant Nugent, as it might have done under Rule 13(g) of the Federal Rules of Civil Procedure.[2] In fact, Socony did not seek to inject itself into the case of Marshall v. Nugent until the jury had rendered its verdict in favor of Nugent, after which Socony moved the district court to vacate and set aside the verdict and judgment in favor of Nugent, and to grant a new trial as against Nugent. This certainly was too late. We think Socony has no standing to appeal from the final judgment in favor of Nugent.

Furthermore, if the judgment for Nugent were properly before us for review on this appeal by Socony, we would reach the same conclusion as we reached in the companion appeal of Marshall v. Nugent, No. 4866, i. e., that the district court committed no substantial or prejudicial error which would warrant an appellate court in overturning the jury verdict.

In Socony-Vacuum Oil Co., Inc., v. Marshall, No. 4867, the judgment of the District Court is affirmed.

In Marshall v. Nugent, No. 4866, the judgment of the District Court is affirmed.

In Socony-Vacuum Oil Co., Inc., v. Nugent, No. 4868, the appeal is dismissed.

2. "Rule 13. Counterclaim and Cross-Claim

\* \* \* \* \* \* \* \*

"(g) Cross-Claim Against Co-Party. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counter-

claim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."